POTTER, J., being ill, did not sit.

---

### HOLT· v. CITY OF CHEYENNE.
### (No. 746.)

WATER AND WATER RIGHTS—ADJUDICATION OF PRIORITIES—BINDING EFFECT—VALIDITY—CERTAINTY—CORRECTION—COLLATERAL ATTACK—FINALITY—APPROPRIATION OF WATER BY MUNICIPAL CORPORATION—USE—SURPLUS—DISPOSITION OF—CHANGE OF POINT OF DIVERSION—ADVERSE USE BY JUNIOR APPROPRIATOR.

1. In an action for damages for an alleged unlawful use of water claimed for irrigation purposes, where it appeared that the plaintiff and defendant were both claimants to water from the same stream and as such were parties to a proceeding in the district court in 1888 resulting in an adjudication of the several priorities on such stream, that adjudication, if valid, was binding upon said parties and their privies.

2. Where a decree of the district court in 1888 in a statutory proceeding for the adjudication of the several priorities to the use of water from a certain stream fixed the order of the several priorities as a finality, and stated the num-

ber of cubic feet of water per second of time allotted to each of the parties, the decree was not void for uncer-certainty because of a recital therein that the court found it impossible at that time to definitely ascertain and fix the amount of water in feet or inches to which each party de-fendant is entitled owing to the uncertainty then attendant upon irrigation and the incomplete experience of the ap-propriators.

3. The fact that such decree allowed to a municipal corpora-tion 12,481 cubic feet per second for the use of its inhabi-tants did not render it void upon its face as ambiguous, uncertain, unintelligible, or incapable of enforcement, nor was it shown to be void by allegations in a pleading in an action against the municipality contesting its right to any water under such decree to the effect that the amount so allotted was greatly in excess of the volume of water flowing in the stream, for the court having had jurisdic-tion of the parties and the subject matter the decree could only be held void, if at all, for defects apparent upon its face.

4. A judgment or decree which is voidable only is not subject to collateral attack.

5. Assuming the quantity of water allotted to the city by such decree to be so great that it might be claimed to be a cleri-cal error or a misprision of the clerk, *held,* that the adju-dication in that respect would be analogous to a judgment or verdict excessive in amount where a party through neg-ligence has failed within the satutory period to take the steps allowed by law to correct or modify it, and thereby has lost his remedy.

6. The decree having, in effect, declared a first priority in favor of the city, and reserved to it as against all others a definite number of cubic feet of water from the source of supply per second of time, it was upon its face definite in time and amount, and while it might have been cor-rected as to amount, if a greater amount than actually in-tended was allotted, upon timely application, or, if errone-ous for any other reason, by proceedings in error, the laches of another appropriator in failing to have the de-cree corrected would not cause a forfeiture of the amount of water to which the city was entitled.

7. Such decree was final and not interlocutory.

8. Plaintiff, in an action against a city for damages for alleged unlawful use of water to which plaintiff claimed to be entitled, objecting that a prior decree adjudicating the

water rights of the parties illegally allotted to the city the right to use a certain quantity of water for the irrigation of land, alleged to be situated outside the city limits but the location of which was not described in the decree, *held,* that in the absence of an allegation to the effect that the city had used, was using, or threatened to use the amount so allowed or any part thereof for irrigating such land, no damage done or threatened to the plaintiff was shown.

9. Where the original or main purpose of a municipal corporation in appropriating water was to acquire a sufficient water supply for the wants and necessities of its inhabitants, both for domestic purposes and protection from fire, the accomplishment of that purpose being within the scope of its corporate powers, it had authority, within the limits of its appropriation, to provide by contract for the use of surplus water on a military reservation located outside but adjoining the city limits, as against subsequent appropriators.

10. A municipal corporation, in appropriating water for municipal and domestic purposes, was not limited in the amount of its appropriation to the needs of its citizens at the time when its water right was adjudicated in a statutory proceeding for determining the relative priorities upon the stream, but it was entitled to appropriate sufficient water for the probable future demands of its population.

11. A municipal corporation having a prior appropriation of the waters of a stream for municipal and domestic uses was entitled to change the place of diversion, keeping the quantity of water diverted within the limits of the city's prior appropriation.

12. Where a municipal corporation has acquired the right by prior appropriation to the use of the waters of a stream for municipal and domestic purposes, a junior appropriator cannot acquire as against the municipality any part of its appropriation by adverse user.

[Decided Jan. 14, 1914.] ·                    (137 Pac. 876.)

ERROR .to the District Court, Laramie County; HON DAVID H. CRAIG, Judge.

The action was brought by Thomas D. Holt against the City of Cheyenne to recover damages for an alleged deprivation of water and water rights. A general demurrer to the petition was sustained, and thereupon judgment was

rendered in favor of the defendant. The plaintiff brought error. The material facts are stated in the opinion.

*Herman V. S. Groesbeck* and *Cassius M. Eby,* for plaintiff in error.

No bill of exceptions is necessary to preserve an exception to an adverse ruling on a demurrer when judgment is entered upon the demurrer, and an exception is allowed and appears in the journal entry of the order and judgment. (Perkins v. McDowell, 3 Wyo. 328; Dobson v. Owens, 5 Wyo. 85; Sawin v. Pease, 6 Wyo. 471; Underwood v. David, 9 Wyo. 178; Comp. Stat. 1910, Secs. 4278, 4628, 4630). The objection that separate causes of action are not separately stated and numbered must be raised by motion and not by demurrer. (Kearney Stone Wks. v. McPherson, 5 Wyo. 178; Ramsey v. Johnson, 7 Wyo. 392; Miskimmons v. Moore, 10 Wyo. 41). One cause of action only is stated in the petition. (1 Ency. Pl. & Pr. 159, 161). There is no necessity for other parties to this action than this plaintiff and defendant. This is not a suit for an adjudication of water rights. No adjudication is needed for plaintiff claims a right by adverse possession. Neither is it sought to reform the decree adjudicating the water rights on the stream. Even if the decree was valid the city is allowed a quantity greatly in excess of its possible needs for all time, and it can claim under its appropriation only what it actually uses, since the decree allots the water only for the use of the "inhabitants" of the city, and not for a separate and distinct community outside of the city limits, such as Fort D. A. Russell. The decree of 1888 is void and incapable of enforcement. 1. It is indefinite, ambiguous, unintelligible and uncertain. 2. It is not a final decree, but at best merely interlocutory, and is not sought to be enforced but has become obsolete as well as void. 3. It allows more water than can possibly be necessary to irrigate sixty acres of city ground outside of the corporate limits. 4. That appropriation was invalid because the land was outside the corporate limits. 5. The several contracts with Fort Rus-

sell were void and against the decree. 6. The city has changed its water system so as to divert the water above the lands of plaintiff to his detriment which cannot legally be done without compensation, and that compensation is sued for in this action. The right of the city to seize the plaintiff's water rights is not denied, but it is insisted that it cannot be done except upon the payment of just compensation and by a proper condemnation proceeding.

It may be plain that the statement in the decree of the quantity of water allowed the city is a clerical error or a misprision of the clerk, but it is now too late to alter the decree in that respect. (Comp. Stat. 1910, Secs. 4650, 4659). It is recited in the decree that the court could not then definitely ascertain and fix the amount of water in feet and inches to which each party defendant is entitled. By that the court clearly meant each defendant. No proof is required as to matters of fact in science or in the arts, or which are generally within the common knowledge. No proof should be required to show that the quantity of water allowed by the decree to the City of Cheyenne was greatly in excess of any possible present or future needs of the city. The allegation to that effect in the petition must be taken as true upon demurrer. No effect can be given to a void judgment. (23 Cyc. 1095, 1096, 1235; Corey v. Campbell, 34 O. St. 204). A decree must be certain in its terms. (16 Cyc. 473; Water Co. v. Santa Barbara, 144 Cal. 578, 77 Pac. 1113). A decree concerning water rights should be as certain as the use of language can make it. (Anthers v. Bryant, 22 Nev. 242; 38 Pac. 439; Patterson v. Ryan, 108 Pac. 1118; 1 Wiel on Water Rights, (2nd Ed.) Sec. 639; Wallace v. Ditch Co., 130 Cal. 578, 62 Pac. 1078; 3 Farnham on Water & Water Rights, 2120; Irr. Co. v. Downer, 19 Colo. 590, 35 Pac. 787; Irr. Co. v. Jenkins, 8 Utah, 369, 31 Pac. 986; Smith v. Phillips, 6 Utah, 376, 23 Pac. 932; Springville v. Holley, 6 Utah, 378, 23 Pac. 933). A judgment granting water in excess of the quantity flowing in the stream, except in times of flood, should be reversed. (Hayes v. Land & Water Co., 136 Cal.

238, 68 Pac. 734). A decree settling a priority for a purpose not authorized by statute is improper. (Doll v. McEllen (Colo.) 121 Pac. 149). A priority confers no right to appropriate for storage in any greater quantity or at any other time than can be appropriated for irrigation as against a subsequent appropriator for irrigation, but whose right is prior to that of storage. (Colorado M. & E. Co. v. Irr. Co., 26 Colo. 47, 56 Pac. 185). A decree that the plaintiff as against the defendant is entitled to all the water in the stream is too vague and uncertain. (Steinberger v. Meyer, 130 Cal. 156, 62 Pac. 156). The decree in question did not fix definitely, or as the law required and requires now, the exact quantity of water allotted to each of the parties, or sufficient data upon which an exact allowance could be predicated. (1 Wiel on Water Rights, 702, 703, 726 and cases cited; 2 Id. 1133; Logan v. Guichard, (Cal.) 114 Pac. 989).

A judgment to be final must dispose of the case as to parties and the whole matter in dispute. The decree complained of does not appear to be a final adjudication of the water. (State v. Derry, 171 Ind. 18, 85 N. E. 785, 131 Am. St. Rep. 237; 11 Ency. Pl. & Pr. 820, 821 and cases cited; White Co. v. Gwin, 136 Ind. 562; U. S. v. Belsinger, 43 Mo. App. 571; Jones v. Pharis, 59 Mo. App. 254; Hill v. Hill, 28 Barb. 23; Whittaker v. Benson, Fed. Cas. No. 17,526; Hall v. Vanier, 7 Neb. 397; Rich v. Metz, 134 U. S. 632; Colby v. Ins. & Tr. Co., 160 Cal. 632, 117 Pac. 913; 35 L. R. A. (N. S.) 813; Powers v. Perry, 12 Cal. App. 77; Nicoll v. Sav. Co., 21 Okl. 591, 96 Pac. 744; Impl. Co. v. Cleveland, 32 Utah 1, 88 Pac. 670; Everett v. Jones, 32 Utah, 489, 91 Pac. 360; Dusing v. Nelson, 7 Colo. 184, 2 Pac. 922; Sidesparker v. Sidesparker, 83 Am. Dec. 527; Gage v. Downey, (Cal.) 29 Pac. 635; Metcalf v. Hart, 3 Wyo. 513; In re Huntley, 85 Fed. 889; Hopkins v. Lee, 6 Wheat. 109). A decree to be operative must contain sufficient certainty in itself. It cannot be aided by presumption. (Watts v. Waddle, 6 Peters, 389; Russell v. Place, 94 U. S. 606). Estoppel by judgment must be mutual. (2 Farnham on Waters and Water Rights, 1866). A final decree is one which

determines and disposes of the whole merits of a cause, or a branch of the case separate and distinct from other parts, reserving no question or directions for future determination. An interlocutory decree is one which leaves the equity of the case or some material question connected with it for future determination. (See notes to 59 Am. Dec. 657; 60 Am. Dec. 428; 16 Cyc. 471; State v. Derry, 171 Ind. 18, 85 N. E. 765; 131 Am. St. 237; Sims v. Sims, 94 Va. 580; Arnold v. Sinclair, 11 Mont. 556; Teaff v. Hewitt, 1 O. St. 511, 59 Am. Dec. 634; Freeman on Judg., Sec. 36; Young v. Young, 135 Mo. 624, 85 S. W. 562; 1 Black on Judg., Secs. 21, 24, 25). The doctrine of *res judicata* applies only to final judgments. (Smith v. Smith, (Neb.) 89 N. W. 799, 23 Am. St. 112). A decree to be final must be definite, certain and capable of enforcement immediately, so that subsequent proceedings are only the means of executing it. (Parmelee v. Schroeder, 61 Neb. 553, 85 N. W. 562, 87 Am. St. 466; Iron Co. v. Martin, 132 U. S. 91; Bostwick v. Brinkerhoff, 106 U. S. 3).

An appropriator may change the place of his diversion, provided that such change will not injure subsequent appropriators. (Ditch Co. v. Henry, 14 Mont. 558, 39 Pac. 1054; Judkins v. Bergin, 67 Cal. 267, 7 Pac. 684; Power v. Sweitzer, 21 Mont. 523, 55 Pac. 32; Union M. & M. Co. v. Dangeburg, 81 Fed. 75). While the city might sell its surplus water, it is held in Edwards v. Cheyenne, 114 Pac. 677, that it cannot do so if that deprives subsequent appropriators of such water. (Hargrave v. Cook, 108 Cal. 72, 41 Pac. 18). The following cases sustain the proposition that there can be no change in the place of diversion when the right of a subsequent appropriator is injured. (Water Co. v. Estrada, 117 Cal. 168, 48 Pac. 1075; Ditch Co. v. Bennett, 30 Ore. 59, 60 Am. St. 777, 45 Pac. 472; Rameli v. Irish, 96 Cal. 214, 31 Pac. 41; Gallagher v. Water Co., 101 Cal. 242, 35 Pac. 770; Kidd v. Laird, 15 Cal. 161, 76 Am. Dec. 472; Ditch Co. v. Irr. Canal Co., 27 Colo. 515, 62 Pac. 847; Cole v. Logan, 24 Ore. 404, 33 Pac. 568; Ditch Co. v. Morgan, 19 Cal. 609; Irr. Co. v. Irr. Co., 46 L. R. A. 820;

3 Farnham on Waters, 2097; Miller v. Baker, (Wash.) 122 Pac. 604; Irr. Co. v. Water Supply Co., 49 Colo. 1, 111 Pac. 610; Head v. Hale, 38 Mont. 302, 100 Pac. 222; Hough v. Porter, 51 Ore. 310, 98 Pac. 1085; Vogel v. Canal & Reser. Co., 47 Colo. 534, 107 Pac. 1108; Becker v. Irr. Co., 49 Pac. 892; Hall v. Blackman, (Ida.) 126 Pac. 1047; White & Co. v. Watson, 64 Wash. 666, 117 Pac. 497; Johnston v. Irr. Co., 13 Wyo. 208; Willey v. Decker, 11 Wyo. 496, 100 Am. St. 939). As to the water used by the City of Cheyenne there has been both a change in place of diversion and a change in use to the damage and detriment of the plaintiff, and this is clearly shown by the petition. Even domestic purposes does not cover general municipal purposes, so as to include water for a lighting plant. In order to acquire that right the city must exercise eminent domain. (Crawford Co. v. Hathaway, 67 Neb. 325, 108 Am. St. 647; Montpelier M. Co. v. Montpelier, 19 Ida. 212; 3 Kinney on Irr. 2586, 2588; Vernon Irr. Co. v. Los Angeles, 106 Cal. 237, 39 Pac. 762).

The petition is sufficient in respect of its allegations as to adverse possession. (Wyo. Comp. Stat. Sec. 4295; Wiel on Water Rights, (1st Ed.) 337 and cases cited; 2 Id. 622; Paddock v. Clark, (Ida.) 126 Pac. 1047; Shurtleff v. Brocken, (Cal.) 124 Pac. 724; Nelson v. Parker, 19 Ida. 727, 115 Pac. 488; Irr. Co. v. Canal Co. 51 Pac. 990, 40 L. R. A. 485; Frank v. Hicks, 4 Wyo. 502; Gustin v. Harting, (Wyo.) 121 Pac. 622; 3 Kinney on Irr. 2599; Johnston v. Irr. Co., 13 Wyo. 235; Tone v. Tillamook, 114 Pac. 938).

*John Charles Thompson,* for defendant in error.

The defect, if any, in the decree adjudicating the water rights between these parties might have been cured or corrected by applying therefor within the proper time. (Comp. Stat. 1910, Sec. 4650). The court had jurisdiction of the subject matter and the parties, and its decree, therefore, was not void. (23 Cyc. 1055-1058 and cases cited; Id. 1095, 1096, 1235). A decree of a court with jurisdiction

cannot be collaterally impeached, although it may appear
from the record or in the opinion of the court that there
was a mistake, and that the judgment should have been dif-
ferent from that actually rendered. (Cooley v. Smith, 17
Ia. 99; Anderson v. Carr, 65 Hun, 179, 19 N. Y. Supp.
592; Stuyvesant v. Weil, 57 N. Y. Supp. 592; Ryan v.
Staples, 76 Fed. 721; 23 Cyc. 1095-1096). The decree in
question was a final decree and not merely interlocutory
(*Ex parte* Crittenden, 10 Ark. 333; Mills v. Hoag, 7 Pac.
18, 31 Am. Dec. 271; Travis v. Waters, 1 Johns. Ch. 85;
State v. Morgan, 10 Pac. 615; Teaff v. Hewitt, 1 O. St.
511). Nor is the decree any the less final because it may
not have adjudicated priorities as to some of the parties
before the court. (Gray v. Cook, 24 How. Prac. (N. Y.)
423; Royall v. Johnson, 1 Rand. (Va.) 421; Dick v. Rob-
inson, 19 W. Va. 159; Liggitt v. Wall, 2 A. K. Marsh.
(Ky.) 149; 16 Cyc. 471-473). The court having jurisdic-
tion the conclusive effect of its judgment is not impaired by
the fact that it may be voidable for irregularities or was so
erroneous in point of law that it might be reversed on ap-
peal or error. (23 Cyc. 1236). The subject matter of this
action being identical with that adjudicated by the decree of
1888, and the plaintiff being privy to one of the parties to
that decree, he is estopped by the decree. (23 Cyc. 1237
and note 88, 1105, 1106; Price v. Bonnifield, 2 Wyo. 80).
A judgment can only be assailed or revised within the per-
iod of statutory limitation. (Corey v. Campbell, 34 O. St.
204). In applying the doctrine of laches, the true inquiry
should be whether the adverse party has been prejudiced by
the delay, and whether there is a reasonable excuse there-
for. (Harrison v. Rice, 114 N. W. 151; Wall v. Meilke,
94 N. W. 688). All presumptions are in favor of the regu-
larity of judgments against collateral attack. (Bank v.
Dukes, 97 N. W. 805; Cizek v. Cizek, 99 N. W. 28). Mere
error or irregularities must be taken advantage of by appeal
or error. (Freeman v. Freeman, 90 N. W. 245; Toogood
v. Russell, 91 N. W. 249; Nichols v. Paulson, 87 N. W.
977; Ludington v. Patton, 86 N. W. 571). The decree of

1888 is conclusive upon the parties.   (Miles v. Balantine, 93 N. W. 708; Hadley v. Bordeaux, 95 N. W. 1109; Ruppin v. McLachlan, 98 N. W. 153; Bannard v. Duncan, 90 N. W. 947).

The right to exclusive use of water cannot be acquired by prescription, where, during the time in which the adverse use is claimed to have prevailed, there was an abundant supply of water for all claimants.   (40 Cyc. 699 and notes.) There had been no abandonment by the city of its water rights.   No adverse user, divorced from the necessary procedure to acquire a water right, can protect one from the legal preference or priority given to an appropriator who complies with the statutory rules and regulations.   (Rev. Stat. 1877, Sec. 1384; Const. Art. 8, Secs. 1, 2; Willey v. Decker, 11 Wyo. 535; U. S. v. Irr. Co., 174 U. S. 774). No claim of right to adverse user of the water adjudicated to the city was ever made or attempted to be made by the plaintiff during the period in which he claims he acquired such right by prescription.   The use of the water by plaintiff from the stream and its tributaries was only by permission of the city as to its surplus water, and that would not give to the plaintiff any ground to claim adverse use.

A prior appropriator may change the use provided he does not thereby interfere with the rights of junior appropriators.   (Ditch Co. v. Henry, 15 Mont. 558; Judkins v. Bergen, 67 Cal. 267; Powers v. Switzer, 21 Mont. 535; Union M. Co. v. Dangeburg, 81 Fed. 73).   There is no allegation in the petition that by the new diversions the city took more water than it was entitled to under the decree of 1888.   It was entitled to the exclusive use of the water of the stream up to the amount embraced in its appropriation and necessary for the purpose thereof.   (Telluride v. Blair, 33 Colo. 353; Lockwood v. Freeman, 15 Ida. 305; Straight v. Brown, 16 Nev. 317; Dunn v. Thomas, 69 Neb. 96). The prior appropriator may change the point of diversion, place, manner, or purpose of use, so long as he does not take a greater quantity than appropriated or otherwise injuriously affect the rights of junior appropriators.   (40

Cyc. 720; Johnston v. Irr. Co., 13 Wyo. 208). Plaintiff was guilty of laches which alone is sufficient to render the petition defective. The work of changing the point of diversion was openly carried on, charging the plaintiff with notice thereof. (Montgomery v. Keppel, 75 Cal. 131, 19 Pac. 178; Unger v. Mooney, 63 Cal. 586; Water Co. v. Santa Barbara, 77 Pac. 1113). The plaintiff was bound by the decree. (Crippen v. Irr. Co., 76 Pac. 794; Canal Co. v. Sugar Beet Co., 90 Pac. 1023; Canal Co. v. Ditch Co., 43 Pac. 535; Boulder Co. v. Lower Boulder Co., 43 Pac. 540; Canal Co. v. Canal Co., 31 Sup. Ct. Rep. 67; Sanford v. Oberlin College, 31 Pac. 1089; Irr. Co. v. Middaugh, (Colo.) 21 Pac. 565; Spear v. Tidall, (Neb.) 58 N. W. 708).

SCOTT, CHIEF JUSTICE.

This is an action for damages for an alleged unlawful use of water claimed for irrigation purposes brought in the District Court of Laramie County by the plaintiff in error who will hereinafter be referred to as the plaintiff, to recover damages from the defendant in error which was defendant in the lower court and which will be referred to as the defendant or the city.

A. demurrer was interposed to the petition upon the alleged ground that the facts stated therein are insufficient to constitute a cause of action in favor of the plaintiff and against the defendant. Upon argument and submission the court sustained the demurrer and judgment of dismissal was rendered thereon. The plaintiff brings the case here on error.

1. The petition is voluminous and sets out at great length the facts upon which paintiff bases his right to recover, and which for the purposes of the demurrer must be taken as true, but we think it unnecessary to set out the petition in *haec verba*. The validity of a decree alleged to have been made and entered in the District Court of the First Judicial District of the Territory of Wyoming within and for the County of Laramie, on April 18, 1888, is assailed and which

decree was rendered in a certain case then and there pending entitled, "In re Application of the Beaver Dam Ditch Company for an adjudication of water rights on Crow Creek and its Tributaries." It is alleged that an amendment to this decree was entered in the District Court of Laramie County on February 11, 1895, and which amendment was supplementary thereto wherein one Edward W. Hopkins was adjudged and decreed the right to the use of the waters of Middle Crow Creek, in an amount equal to 6.72 cubic feet of water per second of time, for the purpose of irrigating the southeast quarter of the northwest quarter; the southwest quarter of the northeast quarter, the north half of the northeast quarter of Section Thirty (30), in Township fourteen (14) North of Range sixty-nine (69) West of the Sixth Principal Meridian, in the County of Laramie, and State of Wyoming, "which said right shall be known as Priority Right upon Middle (Crow) Creek, No. 2A, and on Crow Creek proper, Priority No. 4A, and which right is in all respects co-equal to and shall be administered as the right to the use of the waters of said Middle Crow Creek for the ditch known as the 'Anan Simmons Ditch', with priority right No. 2 and on Crow Creek proper as priority right No. 4, which said last numbered rights were in the above entitled matter heretofore adjudged, decreed and numbered." It does not appear that the rights of plaintiff to his priority as fixed by the final adjudication was in any wise disturbed by this supplemental or amendatory decree, for by the former his priority was number 3 and Hopkins' priority as fixed by the latter was number 4. As Hopkins or his successor in interest, if any, is not a party to this suit we may therefore dismiss the amendatory or supplemental decree from further consideration and direct our attention to the adjudication of April 18, 1888. The plaintiff's predecessor in interest and defendant draw their water from Crow Creek and its tributaries and both were claimants to the water from such source prior to and at the time of such adjudication, and were present as parties and participated in the trial of the case. If the

adjudication was valid both parties and their privies were bound thereby. (23 Cyc. 1067). It is claimed that such adjudication was and is void upon its face for alleged reasons which we will discuss.

There are two grounds, going to the jurisdiction, which will render such an adjudication void. First, when the court is without jurisdiction of the person, and second, when the court is without jurisdiction of the subject matter, and when it appears that the court is without jurisdiction for either of those reasons, the adjudication is void. There is also a third ground not resting upon jurisdictional defects but upon the alleged fact that the decree is so unintelligible as to be impossible of enforcement. In this case it is alleged that the court had jurisdiction of the parties and of the subject matter, and the plaintiff can claim nothing on either of those grounds. He alleges that the decree has never been appealed from, modified or reversed, either with or without the amendatory decree, and alleges that they are now and always have been void on the face of each of them, of no effect and ambiguous, uncertain, unintelligible and not capable of being enforced, for the following among other reasons, to-wit: (a) At the beginning of the decree of April 18, 1888, is the following recital: "This cause coming on to be heard on the petitions and several answers and cross petitions, and the several replies of the parties hereto and the evidence, the court being fully advised in the premises does now find that said Crow Creek is composed of North Crow Creek, Middle Crow Creek and South Crow Creek; that said South Crow is composed of the North branch of South Crow Creek, and the South branch of South Crow Creek; that divers persons, parties hereto, have located ditches and appropriated water of these various streams, and that in order to adjudicate as to the priorities of the rights of all the parties hereto, it is necessary for the court to adjudicate the rights growing out of each of the said streams as between themselves and the parties below them on the main stream. The court further finds that it is impossible at this time, in the uncertainty attendant upon

irrigation and the incomplete experience of the persons appropriating water, to definitely ascertain and fix the amount of water in feet or inches to which each party defendant is entitled." Notwithstanding this recital the court did proceed to fix the priorities and the amount to at least some of the parties who were before the court, including the defendant here and the plaintiff's predecessor in interest. We can not assume that such recital did in fact, nor was it intended by the trial court to have the effect of vitiating the decree, or that part of the decree following those words. The court by its decree did fix the order of the priorities as a finality, and attempted to allot the amount of water to the parties, stating in figures the number of cubic feet of water per second of time allotted to each. As to the water rights of Cheyenne the decree of adjudication recites: "1. The City of Cheyenne is entitled to have twelve thousand four hundred and eighty-one (12481) cubic feet of water per second of time for the use of its inhabitants, of water of Crow Creek proper." * * * * * * *

"24a. The City of Cheyenne is entitled to sufficient of the waters of Crow Creek to irrigate 60 acres of land not to exceed 4.5 cubic feet per second of time."

## "XIV.

"The Court finds that the City of Cheyenne as against each and every and all appropriators of water from the main Crow Creek and its tributaries and as against all other persons is entitled by priority of right for the use of its inhabitants to twelve thousand four hundred and eighty-one cubic feet of water per second of time of the water of Crow Creek; and the court finds that the said City of Cheyenne is entitled to an injunction against each and every appropriator of water from Crow Creek or any of its tributaries enjoining him and them to permit sufficient water to flow down to the city ditch and City of Cheyenne pipe line to satisfy the said prior right of the said city and enjoining him and them from diverting water from said Crow Creek or either of its tributaries in such a manner or to such an

extent as will in any wise interfere with the said prior right of the said City of Cheyenne."

It is contended that the allowance to the defendant of "twelve thousand and four hundred and eighty-one (12,481) cubic feet of water per second of time for the use of its inhabitants of waters of Crow Creek proper is void upon its face, of no effect and ambiguous, uncertain, unintelligible and not capable of being enforced." We see nothing upon the face of the adjudication that would warrant us in sustaining this contention or either of them. Plaintiff does not base his argument upon anything unintelligible or ambiguous appearing on the face of the decree, but upon allegations *aliunde* to the effect that in low water there was only 10 cubic feet of water and in time of high water not to exceed 20 cubic feet in the source of supply and available for any purpose. The eighth paragraph of the petition is as follows, viz: "Notwithstanding said pretended and void decrees, said city defendant at times pretends that it is entitled to twelve and 48/100 cubic feet of water flowing per second of time from the said waters of Crow Creek and its said tributaries and branches, and at other times pretends that it is entitled to all of said water, and plaintiff alleges that all of said pretenses and claims of said city defendant, are and have always been false, vexatious and void, and in direct, hostile and flagrant disregard of this plaintiff and other owners of lands and water rights connected therewith on said Middle Crow Creek." Taking these allegations as true then the claim of the city has never at any time been to the extent of 12,481 cubic feet of water per second of time as fixed and allowed in the decree. It nowhere appears in the petition that in such adjudication the court found the amount of water available in the source of supply other than what might be implied from the allotments. Indeed, the plaintiff in order to maintain his petition treats and regards the decree as void on its face, but the court which rendered such judgment and decree admittedly having the parties before it and jurisdiction of the subject matter had jurisdiction to enter a decree.

The decree entered must fall, if at all, for defects, if any, apparent on its face, (23 Cyc. 1095, 1096, 1235) yet plaintiff goes outside of the decree and rests upon pleaded facts so far as this demurrer is concerned, to avoid the decree. The distinction between a voidable decree and a void decree for the purpose of collateral attack is so well recognized that it needs but little discussion.   It is the universal rule that a decree which is voidable only is not subject to collateral attack (23 Cyc. 1095, 1096) but may be subject to a direct attack.   As stated by the United States Supreme Court: "The doctrine of this court and of all the courts of this country, is finally established, that if the court in which the proceedings took place had jurisdiction to render the judgment which it did, no error in its proceedings which did not affect the jurisdiction will render the proceedings void, nor can such error be considered when the judgment is brought collaterally into question." (McGoon v. Scales, 9 Wallace, 23, 19 L. Ed. 545).   A judgment or decree which is void upon its face (23 Cyc. 1059) may anywhere be treated and ignored as of no binding force or effect. (23 Cyc. 1055, 1070, 1073).

Plaintiff says in his brief that the allowance to the city of such a large quantity of water as mentioned in the decree may be claimed to be "a clerical error, or a misprision of the clerk, but that matter cannot be altered or reformed now."   Sec. 4650, Comp. Stat. 1910, provides that a District Court may vacate or modify its own judgment or order, after the term at which the same was made: "For mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order", and Section 4659 limits proceedings in such causes to three years.   Both of these sections were enacted in 1886 by the Ninth Legislative Assembly of the Territory of Wyoming as a part of Chapter 60, S. L. 1886, being "An Act to establish a code of Civil Procedure for Wyoming Territory", and appear as Sections 2701 and 2710, Rev. Stat. 1887, and as Sections 3795 and 3804, Rev. Stat. 1899. It is thus seen that the plaintiff's predecessor in interest and plaintiff, if he succeeded to his

interest in time to do so, had three years after the entry of such decree within which to apply to the court in which it was rendered to modify it. No such application was made. The adjudication here is analogous to a judgment or verdict which is excessive in amount where a party through negligence has failed to take steps within the statutory period allowed to correct or modify such judgment. In such case the negligent party has lost his remedy. Counsel for plaintiff says: "The decree as it stands in its enormity can not now be changed. Consequently, it can not now be enforced." In view of the statute we think through the laches of the plaintiff or of his predecessor in interest or both, the decree can not be corrected or reformed, but we are not prepared to say upon the face of the decree that it cannot be enforced. To do so we must take into consideration facts *aliunde* pleaded in the petition and upon which plaintiff relies to avoid the decree. The decree in effect declared a first priority in favor of the city and reserved to it as against all others a definite number of cubic feet of water from the source of supply per second of time. The decree was upon its face definite in time and amount. (1 Weil on Water Rights, 726). It may be that such an amount of water as allotted to the city can not be obtained from the source of supply, but that does not appear upon the face of the decree, and if the error was in writing in the decree a greater number of cubic feet than the court actually or intended to allow, such error could have been corrected upon timely application, or, if the allowance of such an amount was intended by the court and was erroneous for any reason, then by proceedings in error within two years to the Supreme Court for correction in that respect; but the laches of the plaintiff in failing to do either would not operate as a forfeiture of the amount of water to which the city was entitled.

2. It is contended that the adjudication is at most interlocutory. It is not so in form. Upon the hearing the court stated the order of priorities and the city was allowed a specific amount of water. If the amount so allowed was·

excessive it is at least definite in amount and was subject to correction for error within a limited time, and aside from this the other parties to such adjudication, including the plaintiff, were perpetually enjoined from interfering with the city's right as fixed by the adjudication.

The plaintiff complained of the allowance to the city of 4.5 cubic feet of water per second of time for the irrigation of sixty acres of land. That part of the decree does not state where this land is or describe it, but the petition without any description alleges that it is outside the limits of the city. There is no allegation to the effect that the city has used, is using or threatens to use the amount so allowed or any part thereof for irrigating such land. No damage done or threatened is shown with reference to this allowance.

3. It is alleged that the city, in pursuance of different contracts with the United States of America to which plaintiff nor his predecessors in interest were parties or ever assented, is furnishing water from its supply not necessary for the use of the city's inhabitants to Fort D. A. Russell Military Reservation and its inhabitants, which reservation is situate outside of and about three miles westerly from the city, to the damage of plaintiff. That originally the headgate of the city's ditch was situated about six miles from the city on Crow Creek proper, lower down on said creek than plaintiff's land and above said military reservation. That such contracts were made, executed and ratified prior to the matters complained of in plaintiff's petition. That the city obtained confirmation and ratification of these contracts by an act of the Eleventh State Legislature of the State of Wyoming, entitled, "An Act empowering special charter cities having a population of not less than ten thousand inhabitants to enter into and perform contracts with the United States Government, its departments or representatives, to supply water for the use of military posts, forts or stations of the United States adjoining such cities and validating such contracts heretofore made", approved February 16, 1911. That none of said agreements have ever been

assented to, ratified, or acquiesced in by the plaintiff or any
of his predecessors in title of, in and to his said lands and
premises, and the water, water rights and appropriations of
water connected therewith, nor has plaintiff and his said
privies and predecessors in title ever assented to, acquiesced
in or ratified any of the uses of the said city defendant or
said military post and its appurtenant reservation of any of
the waters of said Crow Creek. That the city has con-
structed two reservoirs in order to impound and store the
waters of Middle Crow Creek, viz: The Granite Springs
reservoir in section 16, township 14 north of range 70 west
of Laramie County and about eight miles westerly, higher
up and above plaintiff's land, and the Crystal Lake reser-
voir, also located about five miles westerly, higher up and
above plaintiff's lands and premises on said Middle Crow
Creek, for the impounding and storage of the waters of
said creek. That thereafter and in 1909 the city constructed
a main pipe line from Crystal Lake reservoir easterly and
lower down on said creek than said Granite Springs reser-
voir to said Fort D. A. Russell and to said City of Chey-
enne for the purpose of carrying all the waters of said Mid-
·dle Crow Creek from both reservoirs to said Fort and the
city. That the taking of the water from said creek in so
far as the change from the original point of diversion below
to a place above plaintiff's land was a flagrant violation of
plaintiff's rights, as by so doing all the water was impound-
ed, taken into conduits or pipe lines and conducted down by
plaintiff's land and premises, thus depriving him of his
water supply for irrigation, to the permanent injury to his
land in the sum of nine thousand dollars; the use of the
water for his live stock for the years of 1910 and 1911 in
the sum of two thousand dollars; the loss of his hay crop
for the year 1910 in the sum of $3,000, and the loss of his
hay crop for the year 1911 in the sum of $3,000; in all
the sum of $16,000, for which judgment is demanded with
interest, and the further sum of $10,000 exemplary damages.
Taking these allegations as true it is apparent that the
respective rights of the parties must be measured by the

decree made on April 18, 1888. If, as alleged in the petition, the city had bound itself by a contract with the United States to furnish water to Fort D. A. Russell, its inhabitants and appurtenant military reservation which it cannot fulfill except by depriving the plaintiff of any benefit from and use of his appropriation, the answer is twofold:  (1) The city's priority precedes plaintiff's appropriation, and (2) plaintiff is not in a position to complain of the city selling its property or right to use the water within the limits of its appropriation. The first proposition has been discussed. As to the second proposition it was said by this court in Edwards v. City of Cheyenne, 19 Wyo., 110, 160, 114 Pac. 677: "It is well settled that a municipality may devote to other purposes that portion of its public property not required for public use without interfering with the public character of the property, or the right to acquire it, when the original or main purpose is that which the law authorizes." The original or main purpose of the city was to ac-.quire a sufficient water supply for the wants and needs of its inhabitants, both for domestic purposes, and protection from fire. The accomplishment of that purpose was within the scope of the corporation powers of the city. It was so provided by the charter, (Charter of Cheyenne, Seventh sub-div., Sec. 1379, Comp. Stat. 1910), which antedated the decree that the city in its corporate capacity was and is authorized and empowered to enact ordinances "to provide the city with water." Thereafter and in 1887, prior to the adjudication, the Territorial Legislature by an enactment authorized the city to construct a water system and issue bonds and use the proceeds for the construction of such system and which appears as Chapter 112, Comp. Stat. 1910. It will be observed that the plaintiff does not question, but affirms, the validity of such contracts and alleges that the water covered by his appropriation is necessary to the city to fulfill its contract with the United States to supply Fort D. A. Russell, its inhabitants and the military reservation with water. It will be further observed that the water so contracted to be supplied is within the limits of the appro-

priation as decreed to the city. The city was not limited in the amount of its appropriation to the needs of its citizens at the time of the adjudication. This court further held in Edwards v. City of Cheyenne, 19 Wyo., at page 167, 114 Pac. 677, 122 Pac. 900, that a municipal corporation may lawfully dispose of any excess of water supplied by its system for other than purely municipal uses. The right to the use of the water by the city having accrued in the amount of and as fixed by the decree the city had the right to dispose of and apply its surplus water to a beneficial use up to the amount of its appropriation, even though by so doing it left no water in the creek for subsequent appropriators. The change of the headgate from its original place is a right which has been recognized by this court, provided such change does not injure other appropriators from the same source of supply. (Johnston v. Irrigating Co., 13 Wyo. 208, 79 Pac. 22, 70 L. R. A. 341, 110 Am. St. Rep. 986). At the time of the adjudication here complained of the city was not limited by law to the appropriation of only the amount of water required or necessary for the inhabitants of the city, but might appropriate and acquire more than sufficient for those purposes as they then existed, and this was done. If the right to change the point of diversion were denied, such appropriation might be insufficient for the city as its needs and wants in that respect augmented by reason of increased population.

4. It is alleged that prior to and since the adjudication on April 18, 1888, hereinbefore referred to, the plaintiff acquired title to the use of the water by adverse user for the period of twenty-four years. We have no express statutory provision covering or conferring the right to acquire title to municipal property by adverse user as against the municipality, which property is held by it in trust for its inhabitants, and in such case the right is denied by the great weight of authority. It is said in 2 Ency. L. & P., at page 562, that "The rule announced in a great majority of the decisions, in the absence of any express statutory provisions, that such corporations with regard to lands held for public use,

act in a sovereign capacity and title to such lands cannot be acquired as against the municipality by adverse possession." The text is supported by a great many decisions cited in the foot notes, and by parity of reasoning the same rule would apply to other property held by the municipality in trust for its inhabitants. In Norrell v. Augusta R. &c. Co., 116 Ga. 313, 42 S. E. 466, 59 L. R. A. 101, the court said: "After a careful consideration of the question, we are of opinion that the better view is that prescription does not run against a municipal corporation in regard to land held by it for the benefit of the whole public. While it may be entirely proper to apply the doctrine of adverse possession and prescription to a city in matters in which it is concerned in a capacity which is private rather than governmental in its nature, we think that adverse possession by an individual of property held by a city for the benefit and use of the whole public should not be allowed to ripen into a prescriptive title. . The city is in some respects not a division of the State, but it is at least an agent of the State exercising, within certain limits, governmental functions and powers. . If prescription does not run against the State, it should not run against a city in respect to rights which are intrusted to the city for the benefit of the public generally, and as to which it exercises governmental powers. A municipal corporation is intrusted with the care and control of its streets for the use and benefit, not of its own inhabitants merely, but of the whole public, and prescription, which does not run against the State, should not run against its trustee." Such, we think, is the better reasoning, and is supported by the great weight of authority and to which many courts have in later cases acceded, although a contrary doctrine had been announced in earlier decisions. The principle is applicable in the case before us for it may with equal propriety be said that the City of Cheyenne in the matter of acquiring and holding the right to the use of water for the benefit of the whole public acts as the agent of the State in exercising, within the provisions of its charter and the statutory law, governmental functions and powers, and as already stated

the securing of water sufficient not alone for its present but such as may be necessary for its future inhabitants was and is within its governmental powers. Upon the facts alleged we are of the opinion that plaintiff's theory of title by adverse user is untenable.

It is apparent that in order for the plaintiff to recover damages for infringement upon his right to the use of the water here involved he must allege and show a superior right to the use of the water. His contention that the decree of April 18, 1888, was and is void is not sustained; at most it was erroneous and by laches of plaintiff he has lost his right to correct the same. Neither can his claim of title by adverse user for reasons hereinbefore stated be sustained. The judgment will be affirmed.    *Affirmed.*

BEARD, J., concurs.

POTTER, J., did not sit.