## HAGIE v. LINCOLN LAND CO.
### No. 2511.

District Court, D. Wyoming.
Feb. 17, 1937.

James A. Greenwood, of Cheyenne, Wyo., for plaintiff.

John C. Pickett, of Cheyenne, Wyo., and James G. Mothersead and R. T. York, both of Scottsbluff, Neb., for defendant.

KENNEDY, District Judge.

This is a proceeding in which the plaintiff seeks to secure a decree of abandonment and declaration of forfeiture of water rights held by the defendant. A brief history of the litigation follows:

The plaintiff brought the proceeding before the State Board of Control under the provisions of the Wyoming statute, sections 122-401 to 122-432, Wyoming Revised Statutes 1931, to secure a declaration of abandonment and forfeiture of defendant's water rights represented by Fox creek ditch No. 2 and Fox creek ditch No. 3, appropriations, as of priority No. 22 in the adjudication of Bear creek and it tributaries, of which Fox creek is one. After a hearing, the Board of Control issued its order of abandonment and forfeiture. Under the provisions of the statute a certified copy of its order was filed in the office of the clerk of the district court of Goshen county where the property affected is located, and proceedings were there instituted looking to the trial de novo of the issues before the district court in accordance with section 122-427. During the pendency of the proceeding there the defendant, Lincoln Land Company, in due time, interposed its petition for removal to the federal court upon the ground that the controversy involved an amount in excess of $3,000, exclusive of costs, and that the defendant was a resident and citizen of another state, being a corporation organized and existing under and by virtue of the laws of the state of Nebraska, with its principal place of business at the city of Lincoln in that state. The proceeding was accordingly removed to this court, where a challenge to the jurisdiction of the court was made by plaintiff and overruled, and this court then directed that the issues should be put in the form of pleadings in substantial accordance with the pro-

visions of said section 122-427. To the petition a demurrer was interposed by defendant but overruled and an answer subsequently filed. The cause was set down for final hearing, evidence taken, and the matter submitted upon oral argument, supplemented by trial briefs of the parties. Upon the oral arguments and in the briefs only the merits of the controversy are discussed.

The material facts in the case are not in serious dispute. The water rights of defendant represented by appropriations in connection with the Fox creek ditches were taken out for the purpose of irrigating lands adjacent to Fox creek, which is a tributary of Bear creek. These water rights dated from the early 90's and represented very early appropriations in the adjudication by court decree of Bear creek and its tributaries. The evidence is not clear as to what was actually done in the earlier days by way of irrigation of the lands through the Fox creek ditches, although it is evident that there was some irrigation of the lands for which the water was appropriated. Some time in the year 1913 or 1914 a dam was constructed across Fox creek, and by means of a constructed ditch and the natural contour of the area the entire stream was diverted into a new course over and through a substantial portion of the lands for which the appropriations were made. At a point farther down, the water so diverted found its way back to the regular channel of the stream and was used by later appropriators upon lands adjacent to Fox creek before it reached its confluence with Bear creek. This was the only form of applying the water to the lands for which it had been appropriated, as no laterals were built from the diverted stream. The evidence shows that through the peculiar soil formation a seepage resulted which was successful in enriching the meadows through and adjacent to which the diverted stream ran. It was testified substantially without contradiction that through this method of irrigation the productivity of the meadows had been increased from about 300 tons to 500 tons of hay annually. The water rights of the plaintiff who seeks to invoke a decree of abandonment are as of date some twenty years later in point of time than those of defendant and concern the application to lands on Bear creek some ten miles above the point where Fox creek empties into it. The testimony seems to show that other appropriators on Fox creek and on Bear creek below Fox creek much earlier than those of the plaintiff consume all of the available water in the irrigation season which are produced by both Fox creek and Bear creek without having their respective maximum of appropriations fulfilled.

Counsel seem to agree that two points are determinative of the respective rights. It is claimed by the defendant that the plaintiff is not legally qualified to challenge the water rights of the defendant because of the fact that he does not come within the provisions of the statute as one eligible to present a contest. Section 122-422, W.R.S. 1931, provides in part: "When, pursuant to the provisions of § 122-421, any water user who might be affected by a declaration of abandonment of existing water rights, desires to bring about a legal declaration of such abandonment, he shall present his case in writing to the board of control."

In respect of this statute it is urged that the plaintiff is in no wise affected through the use of water by the defendant in the manner which has been above outlined. If it be held that the plaintiff is affected through the use of water by defendant on Fox creek, ten miles below plaintiff's land under the facts in this case, it would mean that pure theory must place plaintiff in a position to become a contestant of defendant's rights. The evidence in this case from the practical standpoint shows rather conclusively that the plaintiff's rights could in no way be affected injuriously or otherwise by the exercise of the defendant in its claimed right of appropriation. Apparently the Supreme Court of this state has not passed upon this feature of the statute. Cases from other jurisdictions have been cited which announce the principle that one purporting to complain of a diversion must show that he will suffer from it. In United States v. Haga (D.C.) 276 F. 41, the principle is stated in the syllabus as follows: "An appropriator from a main channel can complain of a diversion from a tributary only if and when such tributary would, if not interfered with, make a valuable contribution to the main stream."

It would seem to be at least a reasonable principle to adopt in a construction of the statute, that the plaintiff should be required to prove that he would be benefited if defendant's appropriation were cut off. This he has failed to do by any evidence which is satisfactory in this case, and for

this reason the point must be ruled against plaintiff. But, if there should be error in the court's conclusion upon this point, it would be in the exercise of due caution for the court to explore the remaining point in the case.

The defendant strenuously contends that there has been no nonuser of the water represented by its appropriations for the period of five years, and that consequently there can be no declaration of abandonment or forfeiture. The plaintiff's contention to the contrary is based upon the provisions of section 122-421, W.R.S.1931, which in part reads as follows: "Rights to the use of water shall be limited and restricted to so much thereof as may be necessarily used for irrigation or other beneficial purposes as aforesaid; irrespective of the carrying capacity of the ditch, and all the balance of the water not so appropriated shall be allowed to run in the natural stream from which such ditch draws its supply of water, and shall not be considered as having been appropriated thereby; and in case the owner or owners of any such ditch, canal or reservoir shall fail to use the water therefrom for irrigation or other beneficial purposes during any five successive years, they shall be considered as having abandoned the same, and shall forfeit all water rights, easements and privileges, appurtenant thereto."

It appears to be the contention of plaintiff that, because the original ditches taken out in connection with the appropriation were subsequently abandoned, the right of the defendant became thereby forfeited, regardless of the fact that the water represented by said appropriation had been otherwise beneficially applied to the land. The defendant strenuously disputes this contention. Fortunately this point seems to have been ruled by the Wyoming Supreme Court in the recent case of Van Tassel Real Estate & Livestock Co. v. Cheyenne, 49 Wyo. 333, 54 P.(2d) 906. At page 350 of 49 Wyo., 54 P.(2d) 906, 910, the court says:

"Counsel for plaintiff rely upon this statutory rule of nonuser, which, it is claimed, is at least prima facie evidence of abandonment. They cite section 122-421, Rev.St. 1931, which in part reads as follows:

" 'In case the owner or owners of any such ditch, canal or reservoir shall fail to use the water therefrom for irrigation or other beneficial purposes during any five successive years, they shall be considered as having abandoned the same, and shall forfeit all water right, easements and privileges, appurtenant thereto.'

"The statute, by its terms, deals with limitations and restrictions of the use of water. And, notwithstanding the peculiar use of terms, it must, we think, be accepted that it is, primarily, aimed at the nonuser of water, and not to the nonuser of any particular ditch, canal, or reservoir, for, as stated in Wyoming Hereford Ranch v. Packing Co. [33 Wyo. 14, 236 P. 764], supra, it is a fundamental principle under the irrigation law that all the available water supply should be used as far as that is possible. That is the construction placed on similar statutes dealing with the subject of nonuser in other states. Weil, Water Rights (3d Ed.) §§ 574-578; Kinney, on Irrigation (2d Ed.) §§ 1188-1220. Nor is any other construction contended for. The particular place from which the water is taken is, accordingly, of no importance in this connection. And, if the water is actually used by change of the point of diversion, there is no nonuser of the water. Kinney, supra, §§ 1107, 1108. In fact it has been held that even a change of diversion not in compliance with a statute will prevent the application of the rule of nonuser. 67 C.J. 1050. And such change was made, we think, in the case at bar. See the Holt Case [22 Wyo. 212, 137 P. 876], supra. Our statutes do not forbid a change of points of diversion."

Again at page 355 of 49 Wyo., 54 P.(2d) 906, 912, the following language is used: "The city, under these circumstances, cannot, we think, be held to have abandoned any of its priority; it had the right to change the point of diversion, if not injurious to others; it was not compelled to ask the state engineer whether to do so or not; it could do so without reference to him, and the adjudications made should, accordingly, we think, be held to be without effect, in so far as they seemingly attempt to divest the city of any right of priority. To hold otherwise would be to disregard substance, and give an unwarranted effect to form."

The reasoning of the Wyoming high court is elaborated and fortified by the Supreme Court of Oregon in the case of McCall v. Porter, 42 Or. 49, 70 P. 820, at page 822, 71 P. 976, where that court says: " 'The true test of appropriation of water, in its legal aspect,' says Mr. Long, 'is the successful application of the water to the

beneficial use designed; the method of diverting or carrying it or of making the application being wholly immaterial. It is not even necessary that ditches be used. Thus, if a dam or other contrivance will suffice to turn the water from the stream, and moisten the lands sought to be cultivated, this is sufficient, although no ditch be needed or constructed.' Long, Irr. § 49. And in Thomas v. Guiraud, 6 Colo. 530, which was cited with approval by this court in Nevada Ditch Co. v. Bennett, 30 Or. 59, 45 P. 472, 60 Am.St.Rep. 777, it is said by Mr. Justice Helm, in speaking on this question, that: 'If a dam or contrivance of any kind will suffice to turn water from the stream and moisten the lands sought to be cultivated, it is sufficient, though no ditch is needed or constructed. Or if land be rendered productive by the natural overflow of the water thereon, without the aid of any appliances whatever, the cultivation of such land by means of the water so naturally moistening the same is a sufficient appropriation of such water, or so much thereof as is reasonably necessary for such use. The true test of appropriation of water is the successful application thereof to the beneficial use designed, and the method of diverting or carrying the same, or making such application, is immaterial.' In making the diversion or in conducting the water appropriated, use may be made of dry ravines or natural depressions, and, indeed, a natural stream may be so used."

It remains to apply the doctrine of our Supreme Court to the facts in this case. The original diversion ditches of the defendant were probably abandoned, but the water secured to the defendant through its appropriations was diverted by means of a dam on the stream lower down and applied to the lands through a natural seepage or percolation in such a way that those lands were substantially benefited and made to yield more abundant crops. The use of laterals to carry the water over the lands under these circumstances was unnecessary. The use of the dam in diverting waters of the stream was sufficient to moisten the lands so that no auxiliary ditch or laterals were needed. This is sufficient to satisfy the rule of beneficial use. The matter of the point of diversion is not material, but, if the water is used by a change in the point of diversion, there is no nonuser of the water.

It may be admitted, as contended by plaintiff, that no property right can be acquired in seepage water, but this doctrine is limited to the matter of one not being entitled to an appropriation based upon the seepage water of another appropriator. Certainly an individual appropriator ought to have the right to the seepage for a beneficial use which comes from the exercise of his own appropriated right, and it has been so ruled. Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407. The evidence in this case shows that there has been a continuous beneficial use by defendant of its water right by application to its lands for a period of more than twenty years, and that consequently there has been no abandonment, nor should there be a forfeiture of such rights.

For the reasons stated, the defendant in this case must prevail, and findings, conclusion, and a decree in harmony with this memorandum, with costs in defendant's favor, may be submitted through collaboration of counsel on or before March 8, 1937.