(No. 6789.   November 6, 1940.)

GRACE BEUS, Administratrix of the Estate of E. M. BEUS, Deceased, and GRACE BEUS, Respondents and Cross-Appellants, v. CITY OF SODA SPRINGS, a Municipal Corporation of the State of Idaho, Appellant and Cross-Respondent.

[107 Pac. (2d) 151.]

(1)

Merrill & Merrill, for Appellant and Cross-respondent.

O. R. Baum, Ben Peterson and R. J. Dygert, for Respondents and Cross-appellants.

HOLDEN, J.—Ledge Creek is a small stream about three miles in length. Its source is a group of springs located about three-quarters of a mile in a northeasterly direction from

the City of Soda Springs. March 6, 1902, in the case of *Wetzel et al. v. Nichols et al.*, the District Court of the Fifth Judicial District of the State of Idaho, in and for the County of Bannock, decreed the waters of Ledge Creek as follows:

"To E. T. Williams, two cubic feet per second, dating from April 1, 1885, and one and three-fifths feet per second dating from April 1, 1898.

"To the Oregon Short Line Railroad Company, a corporation, one fifth of a cubic foot per second, dating from April 1, 1885.

"To C. H. Wetzel, two and one half cubic feet per second, dating from April 1, 1892.

"To James Strachan, two cubic feet per second, dating from October 1, 1895.

"To Ruth M. Strachan, one cubic foot per second, dating from October 1, 1895.

"To George Nichols, two and seven-tenths cubic feet per second, dating from April 1, 1896."

In 1920 the City of Soda Springs purchased the Williams and Wetzel lands and water rights. The City then constructed a pipe line to the springs for the purpose of piping the water to the City for the use of its inhabitants and municipal purposes generally. E. M. Beus purchased the lands originally owned by James Strachan and Ruth M. Strachan, together with the appurtenant water rights. And Mary Thuet became the owner of the Nichols land, together with appurtenant water right. May 28, 1934, she commenced action against E. M. Beus and Grace Beus, husband and wife, charging the Beuses were interfering with her rights. July 26, 1934, the court, upon petition of the Beuses entered an order bringing the City and the Oregon Short Line Railroad Company into the suit. The parties, by appropriate pleadings, set up their respective claims to the waters of the stream. November 28, 1934, the rights of the railroad company were stipulated. December 6, 1934, the cause proceeded to trial. Shortly afterward an adjournment was taken. Thereafter E. M. Beus died and Grace Beus was appointed administratrix of his estate and substituted as a party defendant and cross-complainant. The court permitted an amendment to the Beus cross-complaint. It charged, among other things, the

City had abandoned all water claimed by it in excess of 80 miner's inches. The court also permitted the City to amend its pleadings. It denied abandonment and alleged it had beneficially used all the water so purchased by it, for municipal and irrigation purposes. Following these amendments the trial of the cause again proceeded. During the course of the litigation a mortgage encumbering the lands and water right of Mary Thuet was foreclosed and the property sold under execution and a sheriff's certificate issued. The purchaser would not further press the Thuet claims. The court, therefore, decreed she had no further interest in the controversy.

Before findings were made and filed and decree entered thereon, the City specially requested the court to find: That it purchased the Williams and Wetzel lands and water rights in order to provide sufficient water for municipal purposes and use of its inhabitants, and the balance for the irrigation of the lands so purchased; that a "change in the point of diversion by the City of Soda Springs from the intake of its ditch for irrigation uses to the intake of its municipal pipe line and the change in the character and manner of use of the water from irrigation to culinary and municipal uses has been without damage to any junior appropriator and that no junior appropriator or owner of any subsequent decreed right will be injured or damaged in the future by the City of Soda Springs using so much of its decreed water right as it might from time to time need in its municipal pipe line for the uses of its inhabitants and for municipal purposes, with the balance of said aggregate right used upon the lands owned by it and described in these findings for irrigation and domestic purposes; that the variation in quantity of use of said water from irrigation to municipal uses, from time to time, and as need arises, increased the beneficial use of said water without injury or damage to any other appropriator;" and that the City of Soda Springs might have an alternating use of its water decreed to it between the farm lands and its municipal water system in such quantities and at such times as the respective needs might require.

January 8, 1940, the court made findings of fact and conclusions of law and entered judgments thereon. The City

appeals from a part of the judgment and respondents and cross-appellants from a part. *In limine,* it may be stated, and as will presently appear, respondent concedes the right of the City to divert 80 miner's inches of water into the pipe line for municipal purposes. That at once presents the question, in so far as the appeal of the City is concerned, as to whether it could, as it earnestly insists, in acquiring water in 1920 to supply then existing needs, also acquire and hold additional water for the purpose of supplying future needs, and, from time to time, divert from Ledge Creek into its pipe line as much of the additional water as would be necessary to supply the growing needs of the City, provided no one was injured thereby.

The respondent states her position to be:

"1. That the decree entered herein allocating eighty (80) miners inches of water to the City of Soda Springs, the appellant, for use in its pipe line is supported by the evidence.

"2. That there is nothing in the record to justify the court directing a change of the trial court's findings wherein it refused to permit a 'dual' or 'flexible' use of the water [thereby apparently contending appellant has no right to an alternating use, and consequently the City is not entitled to a finding on that question].

"3. That owing to the manner that the City of Soda Springs, the appellant, has handled its farm, transferred water and re-transferred water, it has lost any superior right to the use of the waters of Ledge Creek for irrigation purposes in so far as respondents and cross-appellants Beuses are concerned.

"4. That the decree of the trial court should be modified to the extent that the irrigation right of the respondents and cross-appellants Beuses is superior in time to that of the appellant City of Soda Springs as to the waters allocated for irrigation rights."

We will first discuss the question as to whether a municipality may, when acquiring water to supply its existing needs, also acquire and hold additional water for the purpose of supplying future needs.

Section 49–1132, I. C. A., provides a municipal corporation has power to "acquire by purchase, or otherwise,

waterworks systems or plants, . . . . and construct, enlarge, extend, repair, alter and improve such plants or either of them, or any parts thereof, and to supply the municipality and the inhabitants thereof with water, . . . . " It will be observed the statute expressly empowers a municipality to supply its inhabitants with water—without which a municipality would be impossible. To supply the inhabitants of a municipality with water may require, and in this instance did require, either the purchase of water, and the construction of "works" by means of which it can be pumped and piped to the inhabitants, or the purchase of an existing waterworks system. In either case, a municipality is authorized under the statute "to enlarge and extend either plant." But one thing can make the enlargement of a waterworks system necessary—municipal needs which an existing system cannot supply. The statute does not limit the power of a municipality to supply water to present inhabitants—the power granted is general—*to supply its inhabitants with water.* Hence, if, at the time of the acquisition of water for the purpose of supplying existing needs, it is necessary to also acquire and hold an additional supply to take care of future needs, a municipality undoubtedly has power to so do, in that "wherever a power is given by statute, everything lawful and necessary to the effectual execution of the power is given by implication of law." (*State v. Great Northern Ry. Co.,* 68 Wash. 257, 123 Pac. 8, 11, cited and approved by this court in *Cornell v. Harris,* 60 Ida. 87, 93, 88 Pac. (2d) 498.)

In *Holt v. City of Cheyenne,* 22 Wyo. 212, 137 Pac. 876, the Supreme Court of Wyoming had before it the question as to whether a city could acquire water for the purpose of supplying the future demands of its population, the identical question presented in this case. The court held:

"A city's right to appropriate the waters of a stream is not limited to the needs of its citizens at the time of adjudication of its rights, but it is entitled to appropriate for the probable future demands of its population."

The court then reviewed numerous authorities holding that property may be held by a municipality for its future growth and development without being subject to adverse claims of others, and then continues:

"Such, we think, is the better reasoning, and is supported by the great weight of authority and to which many courts have in later cases acceded, although a contrary doctrine has been announced in earlier decisions."

A municipality may purchase lands, if that be necessary, to acquire water for its municipal needs, but is not required, after purchase, to irrigate the lands or cause the same to be irrigated, to avoid a loss of the water on a charge of abandonment. To require that would amount to nullifying the power granted to a municipality to acquire and hold water for future needs—an absolute necessity to the life and existence of a municipality.

Finally, the view that a municipality may acquire and hold water for future needs seems to be placed beyond serious controversy by section 49-1132, *supra,* which, among other things, provides that a municipal corporation has power to supply *excess* water to persons or corporations outside its corporate limits. If a municipality may only acquire water for the existing needs of its inhabitants—those residing within its corporate limits—there could be no *excess* water to sell outside the limits of a city.

That brings us to a consideration of appellant's contention that the court erred in decreeing that the use of the water through the pipe line "shall be confined within the limits of the City of Soda Springs, Idaho."

Section 49-1132, *supra,* provides a municipal corporation has power "to supply any excess water . . . . to persons (including municipal and private corporations) without the limits of the municipality, and to charge therefor; . . . . " The statute does not confine the use of the water of a municipality to the limits of the city, but expressly authorizes a municipality to supply excess water to either persons or municipal or private corporations outside of its limits; therefore, the limit so attempted to be fixed by the court was and is erroneous.

It follows from what has been said there is no merit in respondents' contentions made on their cross-appeal, and, as to the appeal of the City, that the judgment must be, and hereby is reversed, with directions to the trial court to find (and if necessary, take evidence) whether a diversion of the

City's excess water from Ledge Creek into its pipe line, from time to time as needed, would work an injury to any other user of the waters of the stream, and enter judgment in harmony with the views expressed in this opinion. Costs awarded to appellant.

Ailshie, C. J., and Budge and Givens, JJ., concur.

Morgan, J., dissents.