## KANSAS CITY SOUTHERN R. CO. v. SHEFFIELD.

No. 9663—Opinion Filed March 16, 1920.

(Syllabus by the Court.)

1. **Railroads—Killing Stock on Track—Petition—Sufficiency.**

Petition examined, and held to be sufficient to tender the issue of failure to use ordinary care after the discovery of the presence and peril of animals upon track of plaintiff in error, and to warrant the admission of testimony thereunder.

2. **Same—Verdict—Sufficiency of Evidence.**

Record examined, and held, that there was evidence reasonably tending to support the verdict of the jury.

Error from District Court, Adair County; John H. Pitchford, Judge.

Action by W. L. Sheffield against the Kansas City Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

James B. McDonough, for plaintiff in error.

R. Y. Nance, for defendant in error.

BAILEY, J. This is an action begun by the defendant in error to recover damages from plaintiff in error for the value of certain animals alleged to have been killed by the negligence of plaintiff in error. The cause was tried to a jury in the district court of Adair county. Defendant in error obtaining a verdict in the sum of $175, judgment on such verdict was duly pronounced, motion for a new trial filed and overruled and exceptions taken, and the cause appealed to this court.

The facts presented by the record may be summarized as follows: Barron is a flag station on the line of the Kansas City Southern Railway Company. Immediately north of the platform at Barron there is a cattle guard, and extending from such cattle guard are the usual wing fences. The stream of Barron Fork creek is crossed by such railway company at a distance of approximately three-quarters of a mile north of said cattle guards. The railroad track between such points is straight and the view between such points uninterrupted. The injury to the stock occurred between 9 and 10 o'clock at night. The record further discloses that on the night of April 4, 1917, a passenger train of the defendant company left the station at Barron, and that immediately thereafter three head of stock, a horse and two mules, belonging to plaintiff became frightened and running north, passed over the cattle guards or the wing fences on to the track of the defendant company. Their presence on the track of the company was immediately made known to the engineer by the fireman. The stock were apparently traveling at a rapid pace and continued until they ran on and into the bridge of the defendant company over Barron Fork creek.

It is admitted under the evidence that the engineer at all times was aware of the presence of such stock on the railroad track, and that he likewise was aware of the speed traveled by said stock. At the time plaintiff in error's train passed over the cattle guard, certain persons carrying a lighted lantern were at a point nearly equal distance from said cattle guard and the Barron Fork bridge. It is the testimony of the engineer that, having observed such lighted lantern, "it was his hope that whoever it was with that white light would head that stock off, because I knew they would go right through that bridge." He further testified: "An animal don't want no artificial light after night, is my experience." The engineer further testified that, after observing that the persons with the light had failed to stop or turn such animals, after having reached a point where such persons were, he shut off the headlight and pulled up within 30 or 40 feet of the bridge, and that after observing stock upon the track, he slowed down to eight or ten miles per hour. Witnesses at the point where the light was observed testified as follows:

"Q. Where were you when it passed? A. When the stock passed me. Well, they came running just ahead of the train. I didn't travel any space until the train passed me after the stock passed. Q. About how far was the train behind the stock when the stock passed you? A. Well, I couldn't say exactly. I guess,—it was pretty close behind. The train was coming and the stock was on a run just as fast as they could go and the train was coming pretty fast, too, behind them; right behind them. Q. Was there a headlight on this train at that time? A. Yes, sir. Q. Had you seen this light before the train and the stock reached you? A. Yes, sir."

Another witness testified as follows:

"Q. When they passed you was the train following? A. Yes. Q. Their headlight burning at that time? A. Well, I don't know. Q. Could you see the stock plainly? A. Yes, sir. Q. How far was this train behind them? A. I could not say; it was pretty close."

From the facts detailed it will be noted that there is testimony indicating both the burning of the headlight and the train advancing at sufficient speed to keep immediately behind the stock, after the stock had traveled 500 or 600 yards after their presence upon the track was known and at a time when, as admitted by the engineer, the train was just starting after its stop at Barron. We have omitted all mention of the testimony relative to the condition of the fences and cattle guards, for the reason that we do not think such evidence material to a proper decision of this case, for we may assume that, such stock having come upon the defendant's tracks in the manner indicated, the defendant owed no duty other than to exercise ordinary care in the management of its trains to avoid injury to such stock after the presence and peril of such animals were discovered. The record further discloses that, on account of the inability to remove the stock from the bridge, it was necessary to kill two of them, the third escaping without harm.

At the conclusion of the evidence the plaintiff in error requested the court to direct a verdict in favor of the plaintiff in error, which request was denied, and such action of the court is assigned as error. It is the contention of the plaintiff in error, first, that the petition does not claim or allege any negligence of defendant company after the discovery of the peril of the animals; and, second, that the evidence is wholly insufficient to show any negligence after such discovery. In answer to the first grounds for such contention, we think it is sufficient to call attention to that part of plaintiff's petition wherein it is alleged:

"That on said day when the defendant, by its employes and servants were operating one of defendant's trains, running north at the hour of 10 o'clock p. m. of said day, said train scared and frightened said mules and said colt, and caused them to run upon and

over said cattle guard and onto the defendant's railroad track, and the defendant by the negligent operation of its train forced and caused said mule and said colt to run into an open bridge on said railroad track," etc.

It should be observed that the sufficiency of the petition was not challenged by demurrer or motion, and, in the absence of such motion, we think the allegations alleging negligent operation of defendant's trains and that such negligence "forced and caused said mules and said colt to run into the bridge", are sufficient to admit evidence of a failure to use ordinary care after the discovery of the presence and peril of the animals. In Hanlon v. Missouri Pac. R. Co. (Mo.) 16 S. W. 233, it is held:

"An allegation that defendant negligently managed its train warrants evidence to prove its negligence in not stopping the train after its employes saw plaintiff on the track."

As to the second reason assigned in support of the contention, we think, under the admitted evidence showing the knowledge and experience of the engineer as to the habits and characteristics of animals, and his knowing of their presence on the track for a distance of three-quarters of a mile, whether or not he used reasonable and ordinary care in following such animals at the speed traveled, and at the distance indicated by the evidence, his relying upon parties with the lantern to turn the stock from the track, and his continuing to follow with a brilliant headlight for a distance of several hundred yards before turning off such headlight, if, indeed, such headlight was ever dimmed, were sufficient facts to justify the submission of the case to the jury and are circumstances reasonably tending to support the findings of the jury that the defendant company was negligent.

Plaintiff in error further contends that the court erred in giving instructions 3 and 5. We have examined these instructions, and in our judgment the errors pointed out are entirely harmless, by reason of the admitted fact that the engineer was aware of the presence and peril of the animals upon the company's track from the moment they went upon said track until they ran into the bridge. There is likewise sufficient evidence to sustain the contention that the peril of the animals was known, and whether such effort was made as to amount to reasonable and ordinary care to prevent injury to stock was properly submitted to the jury.

Under the evidence in the case the question of whether the plaintiff in error did or did not maintain the proper fence or whether it was necessary to fence its grounds at Barron, where no depot was located or agent maintained, might be open to dispute. As suggested, we do not think these contentions material, and the mention or failure to mention such matters in the instructions, under the terms and provisions of section 6005, Rev. Laws 1910, furnished no sufficient reason for reversal.

Finding no reversible error in the record, the cause is affirmed.

OWEN, C. J., and McNEILL, JOHNSON, and HIGGINS, JJ., concur.