## APPLICATION OF BEAVER DAM DITCH CO.
## CROWELL v. CITY OF CHEYENNE

(No. 2044; September 21, 1939; 93 Pac. (2d) 934)

(Rehearing denied December 12, 1939)

460

For the appellant, there was a brief by *Edward T. Lazear* and *W. O. Wilson,* both of Cheyenne, and oral argument by *Mr. Lazear* and *Mr. Wilson.*

470

For the respondent, there was a brief by *A. D. Walton* and *Harry B. Henderson, Jr.* of Cheyenne, and oral argument by *Mr. Walton.*

ILSLEY, District Judge.

This case is here upon a direct appeal by H. P. Crowell, doing business as the Wyoming Hereford Ranch, from an order of the District Court overruling and denying his motion to modify and correct a decree of the District Court of Laramie County made and entered on the 18th day of April, 1888, adjudicating certain water rights on the stream named "Crow Creek," affecting his property and the rights of the City of Cheyenne, the respondent.

On the 10th day of April, 1887, the Beaver Dam Ditch Company instituted proceeding in the district

474

court of Laramie County praying for an adjudication of water rights on Crow Creek and its tributaries; all those claiming water rights on Crow Creek, including the City of Cheyenne, appearing in the proceeding. The water rights of many people were involved. The City of Cheyenne filed its answer and cross-petition on June 15, 1887, setting up four causes of action, claiming of the waters of Crow Creek: (1) Nine cubic feet per second of time through the city ditch; (2) 3.481 cubic feet per second of time through "City of Cheyenne pipe line"; (3) a water right diverted through the "City Ditch" and City of Cheyenne pipe line as set forth in the first and second causes of action; and (4) another water right not involved here.

The court journal discloses that the then District Judge, W. L. Maginnis, had various hearings in the proceeding which were adjourned from time to time and evidence was taken at the different sittings of the Court, until finally a decree was entered on April 18, 1888, adjudicating the rights of the parties, including the water rights of the City of Cheyenne and this appellant.

It is apparent that considerable time was consumed by the court in the consideration of these proceedings, both as to preliminary matters and as to the taking of testimony before the decree of the court was entered. This came about, no doubt, because some forty or fifty water rights were involved. It is difficult at this date to ascertain just how much evidence was taken and how much was considered by the court between the dates of April 10th, 1887 and April 18th, 1888, as there is no properly authenticated transcript of the proceedings, and, consequently, much is left to conjecture.

This court decree, which appellant seeks by his motion to modify, contains two provisions with respect to the water rights of the City of Cheyenne, the first:

"The City of Cheyenne is entitled to have twelve-

thousand four-hundred and eighty-one (12481) cubic feet of water per second of time for the use of its inhabitants of the waters of Crow Creek proper."
and the second:

"The Court finds that the City of Cheyenne, as against each and every and all appropriators or other persons, is entitled by priority of right for the use of its inhabitants to twelve-thousand four-hundred and eighty-one cubic feet of water per second of time of the waters of Crow Creek; and the Court finds that the said City of Cheyenne is entitled to an injunction against each and every appropriator of water from Crow Creek or any of its tributaries enjoining him and them to permit sufficient water to flow down to the city ditch and City of Cheyenne pipe line to satisfy the said prior right of said City and enjoining him and them from diverting water from said Crow Creek or either of its tributaries in such a manner or to such an extent as will in any wise interfere with the said prior right of the said City of Cheyenne."

To modify these two provisions of the decree so that that which is written "Twelve-thousand four-hundred and eighty-one cubic feet of water per second of time" shall read, "twelve decimal point four hundred eighty-one thousandths cubic feet of water per second of time," is the object of appellant's motion. To do this would not only affect the rights of the appellant and respondent herein, but would also affect the appropriators of all other water rights on this stream.

Appellant filed his motion on the 16th day of March, 1934, claiming that the decree of the court as entered on the journal decreeing 12,481 cubic feet of water per second of time was not in fact the decree rendered by the court, but was entered by mistake due to a clerical error of the clerk in transcribing and entering the decree of record in the court journal, so that the respondent, by reason of the error, instead of receiving 12.481 cubic feet by the decree, received by the decree as entered one thousand times as much water as was intended.

476

The motion of appellant is supported by the affidavit of Robert W. Lazear and there is attached to it many other instruments or papers. There is an answer and resistance to the motion to modify, by the city, supported by affidavits, papers and records, and oral testimony was taken at a hearing on behalf of both appellant and respondent on the 1st of February, 1937, in the court below. We will not attempt to set out all of these matters in detail because they are so voluminous. We have considered them, one and all, and will be content to refer to some of them now and others later as we discuss the questions of law presented.

Mr. Lazear sets forth in his affidavit that he knew Henry Altman, and Dan McUlvan, who owned the ranch having certain water rights at the time of the 1888 decree of adjudication and which was sold in 1917 to the Hereford Corporation of Wyoming, and by it sold in 1920 to the Wyoming Hereford Ranch, and which was sold later, in 1923, to H. P. Crowell, the appellant; that with respect to the terms of the decree in question, a mistake was made by the clerk in entering the same upon the court journal, and that the persons in charge of the Hereford Ranch received and became familiar with the tabulations of the Board of Control for various years, which computations gave as the water right of the City of Cheyenne for the years 1923, 1924 and 1925, 12.48 cubic feet per second of time; that $225,000.00 was expended on improvements at different times; that H. P. Crowell invested his money in this ranch relying on the tabulations of the Board of Control showing the City of Cheyenne was entitled to 12.48 second feet of water; that appellant learned for the first time in the year 1933 (at which time the City had a plan approved for pumping water) of the court decree of 1888,—a certified copy of the decree, giving the City 12.481 cubic feet, being then in the hands of the State Engineer and Board of Con-

trol; and that affiant then learned that a mistake was made in transcribing the decree from the original.

Attached to the motion are copies of the affidavit of Mayor Reel of Cheyenne in 1886; statements of claim to water rights by the Mayor; copy of decree to be modified; deposition of J. R. Whitehead, former deputy clerk of court, taken April 23, 1913, in the case of Holt v. City of Cheyenne, 22 Wyo. 212; and testimony of William G. Provines, John K. Jeffrey, Luke Murrin and C. W. Riner, taken before Judge Maginnis.

The City of Cheyenne filed an answer and resistance to the motion to modify, setting up four defenses: (1) That the motion, records, etc. do not state facts sufficient to entitle the Wyoming Hereford Ranch to the relief prayed for, or any relief; (2) denying a clerical error was made by the clerk in entering the decree and denying that the decree entered on the journal was not the decree pronounced by the court, Judge Maginnis presiding; (3) that because 45 years, 10 months and 26 days expired since the entry of the decree, by which appellant had knowledge, that such proceedings to modify the decree are barred by Section 89-2310, Wyoming Revised Statutes, 1931, which has been the law since 1886; (4) that the predecessors in interest of the appellant, Messrs. Altman and McUlvan, were parties to the original adjudication proceedings and knew of the decree awarding 12,481 cubic feet of water, as did the Wyoming Hereford Association, and that the Wyoming Hereford Ranch and H. P. Crowell, as successors in interest, knew of the contents of the decree at all times since 1920; that the City of Cheyenne, relying on the terms of the decree, expended $4,000,000.00 in improvements upon its water system; that it has grown in population, and through an arrangement with the United States, provides water for the military reservation known as Fort Warren, and has at times used as much as 68½ cubic feet of water from Crow Creek

and its tributaries, and there are times when the direct flow of Crow Creek is not sufficient for the city's purpose; that a storm sewer system has been constructed by which flood waters and sewage from the city are emptied into Crow Creek above the point of diversion from which appellant and his predecessors in interest take water to irrigate their ranch, making available about 8 cubic feet per second of time of sewage, which is more water available to appellant at the point of diversion for the ranch than it would otherwise have even if the city were not to divert any water from Crow Creek; that no steps were taken by appellant to correct, vacate, or modify this decree until March 16, 1934, and that before that time, Judge Maginnis, James R. Whitehead, George A. Draper—the mayor at the time the decree was entered, William G. Provines— city engineer, J. K. Jeffrey—county clerk, and C. W. Riner, whose evidence is attached to the motion, have died, and it is therefore impossible to ascertain what evidence was before the court upon which the decree is based; and that appellant is guilty of laches. Attached to the answer and resistance is the affidavit of T. H. Baldwin, an engineer for the City, reciting matters in connection with water supply and improvements of the city, and that in May, 1922, the Wyoming Hereford Ranch began an action in District Court against the Hammond Packing Company and the City of Cheyenne (33 Wyo. 14) and in its petition, set forth, among other things:

"* * * It was adjudicated and determined by said Court that the defendant City had and was entitled to a first, prior and superior right to twelve-thousand four-hundred and eighty-one cubic feet per second of time of the water of said Crow Creek for the domestic use of its inhabitants and for municipal purposes."

And again, the petition states:

"* * * That by said decree said Court then and there

duly determined and adjudicated that the defendant City had 12,481 cubic feet per second of time of the waters of said Crow Creek for the domestic use of its inhabitants and for municipal purposes."

That in said suit an affidavit for a temporary injunction was made by Vice-President and Treasurer of the Wyoming Hereford Ranch, who is also one of the attorneys in this suit, in which it is set forth:

"That for over thirty-five years the superior right and title of the plaintiff-corporation to that quantity of the waters of Crow Creek referred to in its petition has been recognized and conceded by the whole world and particularly by the said Hammond Packing Company and its predecessors in interest; that during said period of thirty-five years the right of the City of Cheyenne to that quantity of the water of Crow Creek referred to in plaintiff's petition has been by said plaintiff and said defendant and the whole world recognized and conceded."

There are attached to the answer and resistance of the City other papers, records and affidavits, such as copies of pleadings and affidavits in the Hammond Packing Company case, affidavits of Jay K. Stoddard, City Clerk, P. S. Cook and Henry G. Watson.

Are these proceedings to correct the decree of 1888 barred by our Statute? Sec. 89-2301 provides:

"MODIFICATION OF JUDGMENT AFTER TERM. A district court may vacate or modify its own judgment or order, after the term at which the same was made. * * *
"3. For mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order. * * *."
"LIMITATION ON TIME FOR PROCEEDING. Proceedings to vacate or modify a judgment or order for the causes mentioned in sub-divisions four, five, and seven of Section 89-2301, must be commenced within two years after the judgment was rendered, or order made, unless the party entitled thereto is an infant or a person of unsound mind, and in cases of such disability, within two years after the removal thereof;

Proceedings for the causes mentioned in subdivisions three and six of the same Section shall be commenced within three years, and in sub-division nine, within two years after the defendant has notice of the judgment; and under sub-division ten of said Section, the proceedings may be commenced after the guilty party is convicted, if the conviction be within two years from the rendition of the judgment."

These provisions have been in effect since their enactment by the Ninth Legislative Assembly in 1886. By these plain provisions of law, the proceedings are barred.

It is argued that the court has the inherent power to correct clerical errors of the clerk entering the judgment. It may be that under a different set of circumstances a court would have such power, but certainly under the facts in this case, no such power exists. Granting for the sake of argument that 12,481 cubic feet of water per second is an amount so enormous as to suggest the probability of a clerical error in entering the judgment, still, after the judgment has been of record 45 years, we adhere to this court's statement, made in Holt v. City of Cheyenne, 22 Wyo. 228:

"The adjudication here is analogous to a judgment or verdict which is excessive in amount where a party through negligence has failed to take steps within the statutory period allowed to correct or modify such judgment. In such case the negligent party has lost his remedy." See also Corry v. Campbell, 34 O. S. 204 (Ohio).

Even though the statutory provision referred to may in some cases seem harsh, still the equities in the instant case do not warrant us in modifying this decree. It does not satisfactorily appear that a clerical error was made by the clerk. To speculate on what Judge Maginnis had in mind these many years after the entry of this decree takes us altogether too far into the realm of conjecture. All of the important witnesses

are dead, including the trial judge, who, according to the record, spent considerable time in trying the original adjudication proceedings, and the fact remains that he signed a decree in which it is written in two different places that the City of Cheyenne is awarded "twelve-thousand four-hundred and eighty-one" cubic feet of water.

The argument is made that this is an enormous amount of water and counsel would have us believe that because the amount is great, then without question there must be a mistake. We think not. There is no authentic transcript of the evidence and nothing to show all of the happenings in the years 1887 and 1888 when the court was conducting the proceedings. It does appear in the record that at some of the hearings, J. Wesley Hammond, W. L. Kuykendall, Mowry A. Arnold, Charles W. Riner recalled, Joseph M. Carey and W. D. Pease testified, but the record is silent on the nature or even the substance of their testimony. Perhaps their evidence was to the effect that 12.481 cubic feet of water was insufficient for the needs of the growing, young city of Cheyenne and for its future use. Perhaps in their enthusiasm, they envisioned Cheyenne as another Chicago and suggested that 12,481 cubic feet would be none too much for future needs. If we are to guess and speculate on the proposition that a mistake was made as to the amount because of its enormity, it would seem just as fair to speculate on what testimony was submitted to the trial judge that caused him to sign a decree with the figures "twelve-thousand four-hundred and eighty-one" written out in words in the decree. It may be that upon such testimony the City asked to amend its applications and the request was granted and for some reason the matter of placing the amendment of record was overlooked. That, of course, is mere conjecture and speculation.

We make the point that to modify a decree now more than fifty years old, the proof should be clear, cogent and convincing, and nothing should be left to guess work, speculation or conjecture.

In any event the predecessors in interest of appellant were present at the trial when the water rights in question were adjudicated. As was stated in Reynolds v. Stockton, 140 U. S. 254, 35 L. Ed. 464:

"Nor are we concerned with the question as to the rule which obtains in a case in which, while the matter determined was not, in fact, put in issue by the pleadings, it is apparent from the record that the defeated party was present at the trial and actually litigated that matter. In such a case the proposition so often affirmed, that that should be considered as done which ought to have been done, may have weight, and the amendment which ought to have been made to conform the pleadings to the evidence may be treated as having been made."

Then, too, we believe that appellant has waited an unreasonable length of time in bringing these proceedings to correct the decree. "Equity aids the vigilant, not those who slumber on their rights." This maxim applies to stale demands. See 21 C. J. 210; Hays v. Port of Seattle, 251 U. S. 233; Holt v. City of Cheyenne, supra, and in Kelley v. Eidam, 32 Wyo. 271. This court in discussing laches said:

"A party seeking relief against a judgment must show diligence."

And again, in Clarke v. Shoshoni Lumber Co., 31 Wyo. 205, we find this statement of the law:

"Nor do we think there is an impelling equity demanding the vacation of the original judgment. There should be an end to litigation sometime. The original action here was commenced in 1911. Judgment was not taken until nearly five years thereafter. The motion to vacate was not filed until 1918, more than eight years after the original action was commenced. Final judg-

ment was not entered on the motion to vacate until 1921, ten years after the commencement of the original action. It seems strange that the parties should have paid so little attention to their interests and still be entitled to equitable consideration at the hands of the Court."

It also appears that the predecessors in interest of the appellant in the case of Wyoming Hereford Ranch v. Hammond Packing Co., and the City of Cheyenne, 33 Wyo. 14, set forth in the pleadings and affidavit for a temporary injunction that the City of Cheyenne "was entitled to a first and superior right to twelve-thousand four-hundred and eighty-one cubic feet per second of time of the water of said Crow Creek for the domestic use of its inhabitants and for municipal purposes." This was done in 1922. Certainly appellant had knowledge of the 1888 decree at that time. Having stood by all of these years, permitting the City to expend some four million dollars in building additions and improvements to its water system, we are convinced that the appellant is not only guilty of laches, but is now estopped from attacking the decree.

There is another reason why the 1888 decree should not be modified and disturbed. The several decisions of this court, establishing water rights in the municipality of the City of Cheyenne, now constitute a rule of property. An analysis of Holt v. City of Cheyenne, 22 Wyo. 212; Edwards v. City of Cheyenne, 19 Wyo. 110; Wyoming Hereford Ranch v. Hammond Packing Co., 33 Wyo. 14, and VanTassel v. City of Cheyenne, 49 Wyo. 333, as applied to the 1888 decree, clearly establishes this principle.

It is stated in 15 C. J. 947:

"Where judicial decisions may fairly be presumed to have entered into the business transactions of a country and to have been acted upon as a rule of contracts and property, it is the duty of the court, on the prin-

ciple of stare decisis, to adhere to such decisions without regard to how it might be inclined to decide if the question were new. This rule obtains, although the court may be of the belief that such decisions are founded upon an erroneous principle and are not sound, for when parties have acted upon such decisions as settled law and rights have been vested thereunder, their inherent correctness or incorrectness in the abstract are of less importance than that rule of property so established should be constant and invariable."

This principle that judgments of the Supreme Court, establishing rights of a municipality in the waters of a stream, constitutes a rule of property was announced by this court in VanTassel v. City of Cheyenne, et al., 49 Wyo. 333, where it was said:

"However the foregoing may be, the Holt and Edwards cases furnish not only the ordinary precedent, which would, in any event, be generally followed, but they go further and establish, we think, a rule of property, at least in regard to the appropriations of water from Crow Creek and its tributaries. It was held, for instance, that decisions defining the rights of riparian proprietors are a rule of property and will not be overruled. Miller v. Canal etc. Co., 169 Cal. 415, 147 Pac. 567. Some of the rules established in the Edwards case, and the rules laid down in the Holt case, relate to each and every claimant of a water right in the Crow Creek watershed west of the City of Cheyenne. And it is well known that decisions making a rule of property will not be overruled except under the gravest circumstances. 15 C. J. 947-949. So we think that we would not be warranted in overruling the Holt case and the Edwards case, interpreted as above mentioned. They were rendered more than twenty years ago, and the city has expended a considerable amount of money in reliance thereon. If they had been adverse to the city, it is not improbable that it could have exercised the power of eminent domain (Const., Art. 13, Sec. 5), condemning prior rights in times of plenty of water, and at a sum reasonable in amount, but possibly prohibitive in times of scarcity."

In order to insure an orderly administration of jus-

tice with respect to human as well as property rights, the rules of human conduct must be announced and enforced with a semblance of permanency, as near as may be, so that the people may place reliance in them. So it is that judgments—the solemn pronouncements of the court—are not readily and without just cause easily set aside, it being essential that people know what rights they have and what property is theirs. This lends itself to stability and security. It is these things which all of us desire and would like very much to attain.

With respect to the contention that appellant has been deprived of his property without due process, because of the refusal of the lower court to modify and correct the April 18th, 1888, decree, we are unable to agree. Due process has been accorded the appellant since the inception of the proceedings in 1887. The judgment of the lower court will be affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.