## LINCK v. BROWN

(No. 2102; December 12, 1939; 96 Pac. (2d) 909)

For the plaintiff in error, there was a brief by *R. R. Rose* and *Vincent Mulvaney,* both of Casper, and oral argument by *Mr. Rose.*

For the defendant in error, there was a brief by *G. J. Christie* and *H. S. Harnsberger,* both of Lander, and oral argument by *Mr. Christie.*

KIMBALL, Justice.

The parties, Ernest N. Brown, plaintiff, and C. V. Linck, defendant, severally own lands that have been

irrigated by means of the Bee Line ditch diverting water from Crow Creek in Fremont County. Plaintiff sued for damages and injunction, alleging that he was the sole owner and entitled to exclusive use of the ditch, and that defendant wrongfully interfered with such use. Defendant alleged that he had a right to use the ditch, and also claimed damages. The trial was without a jury and resulted in a judgment which denied claims for damages, but found that plaintiff was "the sole owner * * * and entitled to the sole and exclusive use" of the ditch, and granted an injunction to prevent defendant from interfering with such use. The defendant prosecutes error, and contends that the evidence is insufficient to support the finding.

Plaintiff has owned his land and appurtenant water rights since 1916. Defendant's land has been owned successively by Durrill until June, 1918; by Barnes from June, 1918, to June, 1921; by the Riverton State Bank from June, 1921, to September, 1933, and by defendant since September, 1933. These dates are shown by parol evidence and may be merely approximate. The lands of the parties are contiguous, plaintiff's in section 17, and defendant's north and west in sections 7, 8 and 18. When plaintiff acquired his land in 1916, 110 acres thereof in the northwest quarter of section 17 were irrigable from the original Bee Line ditch that had been constructed under permit No. 8242 issued in 1908. Plaintiff made proof of appropriation under this permit and received certificate of appropriation for 1.57 cubic feet of water per second, with priority date February 15, 1908. This original Bee Line ditch runs almost due south from the headgate for about one and two-thirds miles, and for half of that distance is on defendant's land near the east line of sections 7 and 18. In the fall of 1916, plaintiff desiring to provide for the irrigation of a part of his land not served by the original ditch, made application for and was granted a

permit (No. 3703 En.) to enlarge and extend it. The contemplated extension was a new ditch with headgate in the original ditch near its end where it crossed the section line between sections 7 and 18, and running thence in an arc southwest, south and southeast until it reached and ran above the lands plaintiff proposed to irrigate therefrom. A large part of this proposed extension ditch would have been on defendant's land in the northeast quarter of section 18, then owned by Durrill, but that part was never constructed. Plaintiff testified that Durrill requested that the extension ditch be constructed with its headgate at a point on the original ditch almost a mile north of the headgate shown on the map accompanying plaintiff's application for permit No. 3703 En. Plaintiff agreed, and the extension ditch was constructed as requested by Durrill, though not until after Durrill had sold to Barnes. The headgate of the extension ditch, as actually constructed, is in the original Bee Line ditch near the section line between sections 6 and 7, and from this headgate the new ditch runs southwest, south and southeast across land then owned by Barnes for about a mile and one-fourth until it reaches plaintiff's land and thence along the line of the ditch described in plaintiff's permit No. 3703 En. The construction work on the new ditch was done in 1918, and some years thereafter plaintiff made proof of appropriation and received certificate of appropriation, with priority date October 21, 1916, for 1.5 cubic feet of water per second for the irrigation of 105 acres.

Defendant's water right was perfected under permit issued on the application of Barnes in July, 1919, to enlarge and extend the Bee Line ditch. The proposed extension, as shown on the map accompanying the application, was the extension ditch which, according to the testimony in this case, had already been constructed along the line suggested by Durrill, Barnes'

grantor. The record of this application shows this endorsement, headed "Consent to Enlarge":

"I Ernest M. Brown, the sole owner of the Bee Line ditch, taking water from Crow Creek under Permit No. 8242 and 3703 Enl., do hereby give my free and voluntary consent to the enlargement or extension of, and to the use of water through, the said ditch, for the irrigation of 429 acres, by C. E. Barnes, according to the terms of his application for enlargement.
"Dated November 2nd, 1917.
"Ernest M. Brown."

The application was approved as Permit No. 4088 Enl., and thereafter certificate of appropriation of 5.7 cubic feet of water per second for the irrigation of 399 acres, with priority date July 21, 1919, was issued to the Riverton State Bank, Barnes' grantee and defendant's grantor.

The record in regard to the written "Consent to Enlarge," endorsed on Barnes' application for permit No. 4088 En., is confusing. The writing is dated November 2, 1917, but the application on which it was endorsed was not completed and presented to the Board of Control until July, 1919. The application with the consent endorsed thereon was pleaded and introduced in evidence by plaintiff. In the petition, plaintiff alleged that the application "falsely purports to have the consent of plaintiff thereto," and denounced the written "consent to enlarge" as false, fraudulent and pretended. Defendant by motion requested that plaintiff be required to make his petition more definite by alleging "unequivocally whether he did or did not sign the consent," and the motion was denied. On the trial, plaintiff, the only witness who knew whether he did or did not sign the written consent, gave no testimony on the subject, but apparently relied on the fact that the proof showed consent by Ernest "M." Brown instead of Ernest "N." Brown. The original application could not be found, but was proved by plaintiff by

introduction of a photographic copy of the application as transcribed on the record in the office of the State Engineer. The "M" instead of "N" as the middle name or initial may have been the result of a clerical error. Defendant contends that in the state of the pleadings and evidence, it must be taken as an established fact that plaintiff did sign the written "consent to enlarge." We may assume that this is so, without deciding the point. The fact is not controlling. The extension ditch had been constructed before the application for permit No. 4088 En. was completed and filed, and there was substantial evidence showing that the ditch was not thereafter enlarged as contemplated by the application and permit. It is not contended that plaintiff's consent to enlarge gave defendant any ground for questioning plaintiff's right to prior use of the ditch, and it is that right which the injunction, as limited by our decision, will protect.

The Board of Control, in determining water rights, investigates the question of the water appropriator's means of diversion, but its finding that the water is appropriated by means of a named ditch, though for certain purposes *prima facie* evidence of the right of the appropriator to use the ditch, is not final or conclusive on that matter. See Hamp v. State, 19 Wyo. 377, 406, 118 Pac. 653; Bamforth v. Ihmsen, 28 Wyo. 282, 318, 204 Pac. 345. In the present case, neither party asserts a prescriptive right under section 122-501, R. S. 1931, and we decide nothing as to the effect of that statute. Allegations in the pleadings and the declaration in the judgment that plaintiff is the "sole owner" of the extension ditch on defendant's land, must be taken to mean that he has an easement—a right of way for construction, maintenance and exclusive use of the ditch. See Little-Wetzel Co. v. Lincoln, 101 Wash. 435; 172 Pac. 746. The easement is an interest in real estate within the statute of frauds. Wiel on

Water Rights (3d ed.) § 556; Kinney on Water Rights (2d ed.) § 978. There is no written evidence of a contract, and plaintiff must find basis for his claimed right in acts or omissions of the parties that give him an easement by adverse possession or by application of some equitable principle. See Gustin v. Harting, 20 Wyo. 1, 121 Pac. 522, Ann. Cas. 1914C 911; Tiffany on Real Property (2d ed.) § 349. In this court, defendant concedes that plaintiff's water rights are prior to his, and that plaintiff has the prior right to use the ditch on defendant's land for the diversion of the water plaintiff is entitled to use under his certificates of appropriation. The question is whether there was substantial evidence to show that plaintiff's easement was exclusive.

Plaintiff apparently relies on the fact that at the request of Durrill he constructed the ditch on a line suggested by Durrill. Durrill did not testify, and plaintiff's testimony does not disclose the reason for the request or the benefit Durrill expected to receive. But this oral arrangement with Durrill does not seem important, as the ditch was not constructed until after the land had been sold to Barnes, and any right of plaintiff based on construction and use must have been initiated while Barnes was owner. It may be conceded that Barnes consented to the construction and use of the extension ditch on his land, but the evidence on which plaintiff must rely to show such consent shows also that the parties did not intend that plaintiff should have an exclusive easement.

The testimony of plaintiff himself shows that Barnes helped materially in the construction of the extension ditch. The work took only ten days. Plaintiff worked throughout that time—for eight days alone and for two days assisted by a man who was working for and paid by Barnes. Plaintiff used his own team and plow. Barnes furnished a team for two days, and the ditching

machine used throughout the work. After its construction the ditch was used and maintained jointly by plaintiff and defendant's predecessors in interest for the irrigation of parts of their respective lands. Barnes helped to maintain the ditch, and in 1919 and 1920 irrigated 35 or 40 acres of his land. From 1925 to 1934, the land on which the ditch was located, then owned by the Riverton State Bank, was in possession of plaintiff as tenant of the Bank, and the ditch was used by plaintiff to irrigate both the land that he owned and about 45 acres of the land that he leased. Up to this time plaintiff had no complaint on account of scarcity of water for the land he owned, and had not claimed or exercised any exclusive right to the use of the extension ditch. The controversy arose after 1934, while defendant was in possession as grantee of the bank; but even then, until this action was commenced in the fall of 1937, plaintiff did not assert a right to an exclusive easement. The joint maintenance and use of the ditch continued. Plaintiff significantly testified that when he saw defendant working on the ditch in the summer of 1937, he "thought maybe he (defendant) would go ahead and finish cleaning it out." Plaintiff's ground for complaint was that defendant's control and use of the ditch for his purposes prevented plaintiff from receiving the quantity of water to which he was entitled under his prior appropriations. We think it clear from undisputed facts that the easement plaintiff acquired for the extension ditch is not exclusive, but one that permits a use by defendant that does not interfere with plaintiff's prior right. See Smith v. Hampshire, 4 Cal. App. 8, 87 Pac. 224; Bashore v. Mooney, 4 Cal. App. 276, 87 Pac. 553; Hoyt v. Hart, 149 Cal. 722, 87 Pac. 569; Tomchak v. Harris, 54 Ida. 448, 32 P. (2d) 1025. It is clear also that at times in the past the ditch has been capable of carrying water for use by defendant's predecessors without interfering with

plaintiff's prior right to water needed for his land, and it seems probable that this condition may prevail in the future.

Plaintiff, under his two certificates of appropriation, is entitled to appropriate 3.07 cubic feet of water per second of time for the irrigation of 215 acres of land. His evidence shows that the ditch will carry more than that amount of water and that he customarily irrigates less than that acreage. Though he has failed to establish his alleged exclusive easement, he has a prior right which, as shown by the evidence, defendant refused to recognize. We think the right will be sufficiently protected by an injunction that will prevent defendant from doing any act that will render the ditch unsafe or inadequate for plaintiff's use or will otherwise interfere with plaintiff's prior right to use the ditch for the diversion of the quantity of water, not to exceed 3.07 cubic feet per second, which he can and does apply to the beneficial purposes mentioned in his certificate of appropriation.

The case will be remanded with direction that the findings and judgment be modified to conform to the views above expressed.

*Modified.*

RINER, Ch. J., and BLUME, J., concur.