Bryan WHITE and Frances H. White,
Appellants (Defendants below),

v.

WHEATLAND IRRIGATION DISTRICT,
Appellee (Plaintiff below).

No. 3445.

Supreme Court of Wyoming.

April 15, 1966.

Clarence A. Brimmer, Jr., and Samuel T. Ishmael of Brimmer & Brimmer, Rawlins, for appellants.

William Jones, of Jones & Jones, Wheatland, for appellee.

Before PARKER, C. J., and GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Claiming to have acquired by prescription an easement for a water ditch across certain lands belonging to the defendants, the plaintiff commenced an action among other things to enjoin the defendants from interfering with the ditch as it traversed their lands. By their answer defendants denied that plaintiff had a ditch across their lands and also denied that plaintiff had acquired an easement for the ditch right of way. Alternatively, defendants denied that they had in any way interfered with the ditch. By way of counterclaims defendants sought to have title to their lands quieted as against the plaintiff and further sought to have declared void an order entered by the Board of Control of the State of Wyoming on April 17, 1935, amending a certificate of appropriation previously granted to one of plaintiff's predecessors in interest relating to a part of the water being conveyed through the ditch claimed by plaintiff. Upon trial of the case the trial court found generally for the plaintiff and against the defendants and decreed that plaintiff was the owner of the ditch in question and had an easement for a right of way therefor across the lands of the defendant. The defendants were also enjoined from interfering with plaintiff's use of the ditch. The trial court further found, however, that the defendants and their predecessors had a right out of the same source from which plaintiff diverted its water, and the portion of plaintiff's ditch that crossed the defendants' lands was utilized by the defendants or their predecessors for distribution of their appropriated water. It was further provided that defendants were entitled to continue the use of plaintiff's ditch in the same manner that it had been used in the past without in any way enlarging such use. The defendants have appealed from the judgment so entered.

The circumstances surrounding the controversy here had their inception in the year 1882. The lands involved are in Sections 1, 2, 10, 11, 15, and 16 in Township

19 North, Range 78 West of the 6th Principal Meridian, Carbon County, Wyoming. The plaintiff owns or controls all of the lands specified with the exception of those in Section 10, which are owned by the defendants. It is undisputed that in the year 1894, Frank Cooper, a predecessor in interest of the plaintiff, obtained from the board of control a certificate of appropriation for 5.07 c. f. s. of water from Rock Creek for irrigation of some 355 acres of land situate in Sections 11, 15, and 16. The point of diversion was located in the NW ¼ SW ¼ of Section 16 out of Dry Creek described in the proceeding as a channel of Rock Creek. The ditch by which the water so appropriated was conveyed to the lands irrigated was identified in the records as the Harrison 7-L Big Field Ditch—later changed to Harrison 7-L Big Field Combination Ditch—and which for our purposes here will usually be referred to as the Harrison Ditch. In the same proceeding Frank Cooper also obtained a certificate of appropriation for 4.35 c. f. s. of water out of Three Mile Creek, referred to as a tributary of Rock Creek, for irrigation of some 305 acres of land in Sections 1, 2, and 11. The ditch by which such appropriated water was conveyed to the lands involved was identified as the Combination Ditch. In the year 1935 this certificate was amended to describe the source of supply as Dry Creek rather than Three Mile Creek and to show that the water so appropriated was conveyed to the lands through the Harrison Ditch. All of the water rights so obtained by Frank Cooper had a priority date of 1882.

Another water right involved is that owned by the defendants. In the year 1897, one W. F. King, the predecessor in interest of the defendants, obtained a permit from the office of the state engineer to appropriate 2.24 c. f. s. of water out of Dry Creek for the irrigation of certain lands in Section 10. According to the records, the point of diversion was to be in the NE¼ NE¼ of Section 16 and the water was to be conveyed through a ditch identified as King Ditch No. 1 to the irrigated lands in Section 10. While the plat accompanying the application for the permit showed the location of the King Ditch as running in a northeasterly direction across Sections 16 and 15 to the south boundary line of Section 10 at a point near the southwest corner and thence proceeding east along the said boundary to a point of termination in the SE¼ SE¼ of Section 10, the undisputed testimony was that the ditch had not been so constructed. It is shown by the testimony that the King Ditch was "man-made" from the point of diversion to within a short distance from the point above described on the boundary line of Section 10. From there the water flowed into a natural draw or "swale" as the defendant Bryan White described it. There is a sharp conflict in the testimony as to whether or not this was the same draw claimed by the plaintiff as a part of its Harrison Ditch across Section 10, but in any event that conflict has been resolved by the trial court in favor of the defendant, and we accept it here as an established fact. The draw ran northeasterly across the S½ of Section 10 and as a means of applying the water to the irrigated lands in Section 10, defendants' predecessor King, at some time prior to the year 1950, placed seven or eight spreader dams varying in height from eight inches to three feet across the bottom of the draw. As the water hit the small dams it would spread out over the land "a little way from the ditch" as stated by defendant Bryan White, and then drop back into the draw and the process repeated farther down.

■ With respect to the irrigation works of the plaintiff and their location, we again find a sharp conflict in the testimony. Nevertheless, our analysis of all of the evidence convinces that there was sufficient evidence from which the trial court could find that plaintiff had used for many years a natural draw across defendants' lands for the purpose of conveying its appropriated water to the irrigated lands in Sections 11, 1, and 2. For example, there is in evidence, attached to plaintiff's Exhibit 1, a copy of an official map taken from the rec-

ords of the office of the state engineer which was prepared by Earl Lloyd, surveyor, in the early part of the year 1935. In the certificate appearing on the face of the map Lloyd states that the map correctly represents the irrigation works shown thereon. Lloyd also made reference to a map prepared by one Mike Gordon, which from the records of the state engineer appears to have been made in the year 1911. Although the defendants vigorously assail the accuracy of both maps which show the Harrison Ditch extending across their lands, plaintiff's witness Lloyd Dixon, who became familiar with plaintiff's works as early as the year 1920, testified that the location of the ditch as shown by the maps was approximately correct. According to this witness, who was corroborated by Lawrence LeBeau, presently the lessee of plaintiff's lands and who had been familiar with the works for at least 20 years, the Harrison Ditch from the point of diversion was "man-made" for a distance of approximately one-half mile. The terrain of the area was such that the water coming out of the artificial portion of the ditch followed a natural draw across Section 16, through Section 15, and then continued on through the S½ of Section 10 in a northeasterly direction into Section 11. At approximately the east boundary of Section 10 a dike had been built in the draw by which a portion of the water was diverted into a lateral running to the north for distribution on a part of the lands of Section 11, and a portion of the water continued on east through the draw which then by means either of natural channels or artificial ditches was distributed to other lands in Section 11 and to lands in Sections 1 and 2. The witness Dixon also testified that the depth of the natural draw utilized as a part of plaintiff's irrigation works varied in places from ten inches to two feet below the surrounding land, and also said there were banks on the draw "like banks on a creek." He also described the natural draw across defendants' lands as having a gradual drop with moderate banks all the way across Section 10. He also said that there were indications of "man-made work" on the draw as it traversed Section 10 and explained that this was brought about through the use of "slips" in the early days when it was the practice to take the dirt out and dump it along the bank, and "You can still, if you go up there, see where they dumped the slips."

In the year 1961 the defendants, purporting to act pursuant to the original plat of the King Ditch, proceeded to construct an extension thereof along the southern boundary line of Section 10 from the point where the ditch originally terminated to a so-called lateral which then carried the water to the north. In so doing the defendants crossed the Harrison Ditch in two places. Rather than to flume their appropriated water across the Harrison Ditch—which incidentally they are now required to do by the judgment if they continue to use the extension—the defendants built two dikes in the ditch, which as the trial court was entitled to find interfered with plaintiff's use of the ditch. On at least two occasions the lessees of plaintiff had gone upon the lands of defendants and removed the dikes but the defendants immediately rebuilt them. These activities on the part of the defendants brought on this litigation.

In the foregoing summary and analysis of the record we have endeavored generally to set forth the background of the dispute. That will be enlarged upon where necessary to dispose of the several claims of error advanced by the defendants.

In giving consideration to those claims we think it will be beneficial first to take up the contention that the trial court erred in refusing, as requested in their counterclaim, to declare void and set aside the 1935 order of the board of control amending the certificate of appropriation mentioned above and to declare that plaintiff was without right to divert water out of Dry Creek pursuant thereto. The basis for the contention is that the board at that time was without authority, statutory or otherwise, to enter the order and that the proceeding had was without notice. In this connection we

should mention the stipulation of the parties that no notice of the proceeding was served on the defendants or any other appropriator.

We are not informed as to the theory upon which the trial court decided the matter. Nevertheless, if the determination was correct, under any theory, it will not be disturbed. State v. Laramie Rivers Co., 59 Wyo. 9, 136 P.2d 487, 491. Basic also to the consideration of defendants' challenge to the authority of the board to enter the order here in question is the pronouncement made in Campbell v. Wyoming Development Co., 55 Wyo. 347, 100 P.2d 124, 140, rehearing denied 102 P.2d 745:

"* * * Before a party may attack the right of another, either on constitutional or other grounds, he must first show that he himself has a right which has been invaded thereby. He must have an interest which is affected. * * * There is no reason why he should intermeddle with the claims of another, unless he has such interest. * * *"

In support of the claim that defendants did have a right and that such right was invaded without notice, the defendant Bryan White testified that he was the owner of a right to appropriate water out of Rock Creek with a priority of 1904. He then mentioned plaintiff's right out of Three Mile Creek—heretofore described—with a priority of 1882. According to this witness the effect of the board's order was to transfer plaintiff's right out of Three Mile Creek with the 1882 priority to Rock Creek and thus the order "just eliminates that much from my priority." If the assumption of the witness is sound, then it would no doubt have to be conceded that there is some merit in the contentions that the order was void as to him. If the assumption is unsound, then defendants cannot prevail for the reason that their entire argument is based on that assumption and no claim is made that they were otherwise injured by the order. After careful consideration of the matter we are constrained to say that we have difficulty in accepting the assumption.

While it is true that the board entitled the proceeding as one "FOR CORRECTION OF DESCRIPTION OF SOURCE OF SUPPLY," a careful analysis of the board's records indicates that this was probably a misnomer. The net result of the 1935 proceeding, as we view it, was simply to confirm and note on the board's records a change in point of diversion from one channel of Rock Creek to another. It was in no true sense a change in source of supply. This we are convinced is reflected in the affidavits that accompanied the petition initiating the 1935 proceedings and also in part from the record of defendants' 1904 right, which the defendant Bryan White mentioned. In the affidavit of Mrs. Bosler it was stated that in the early days One Mile Creek, Three Mile Creek, and Dry Creek were known and considered as channels of Rock Creek. That is borne out by the listing of defendants' 1904 right in the official publication of the board, of which we take judicial notice, entitled "Tabulation of Adjudicated Water Rights of the State of Wyoming Water Division Number One (1956)," wherein at page 152 it is shown that such right is out of Rock Creek. Reference is made, however, to a footnote in which it is stated, "These appropriations are actually from Three Mile Creek Channel of Rock Creek." The record also bears out that the board has not been consistent in its classification of Three Mile Creek, having described it as both a tributary and as a channel of Rock Creek. Nevertheless, keeping in mind that the certificate of appropriation granted to defendants was several years later than the certificate granted to plaintiff's predecessor, it would seem necessarily to follow that if the board as late as 1904 correctly described Three Mile Creek as a channel of Rock Creek for purposes of defendants' right, and that has not been questioned, it was just as proper so to regard it for purposes of plaintiff's right, and we are satisfied that this was the view taken by the board

Further, in connection with the matter of priorities, it was also stated in the Bosler affidavit that the water here in question was always diverted out of Dry Creek. From this, and from the accompanying affidavits of three other persons long familiar with the matter, it is shown that it was the practice to convey this water from a point of diversion on Dry Creek through the Harrison 7–L Big Field Ditch across Sections 16, 15, and 10 to Section 11 and then to distribute it to the lands irrigated by the Combination Ditch. It was also stated that the granting of the petition would not injure or affect the rights of other water users and that, of course, involved priorities. While the board made no special findings with respect to these factual questions, a finding favorable to the petitioner can be implied from the recital in the order that "The Board, having considered the petition and being advised by the records of the office of the State Board of Control and the showings presented in the matter, THEREFORE ORDERS: THAT the petition be GRANTED." It must be assumed that the board in reaching such conclusion performed its duty of inquiring into the questions and that its determination was prima facie correct. Campbell v. Wyoming Development Co., 55 Wyo. 347, 100 P.2d 124, 136, rehearing denied 102 P.2d 745; Hunziker v. Knowlton, 78 Wyo. 241, 322 P.2d 141, 143, rehearing denied 324 P.2d 266.

The burden was on defendants to overcome the presumption and in this we think the trial court could properly hold that they failed to sustain it. From what has been said it is quite apparent that a change in point of diversion of a water right with a priority of 1882 could in no way disturb the priority of a 1904 right from the same source of supply. Furthermore, we cannot believe that prior to the controversy herein the defendants ever seriously believed that such priority had been disturbed. It is well known to the water users of this state that a remedy is available through the state engineer's office ex- peditiously to determine the rights of an appropriator claiming to have been deprived of water to which he was legally entitled. Yet there is no showing here that the defendant Bryan White, who was familiar with the entire situation from the time he was a small boy, or his predecessor ever complained to the board that the 1904 right was being invaded by the practice of plaintiff's predecessors in diverting water under the 1882 right from Dry Creek rather than Three Mile Creek. For water users not to complain promptly and vigorously of what is claimed to be a patent invasion of a water right to the authorities in charge of administering the state's water, in our experience, is most unusual, to say the least.

Neither can the board's authority to entertain and decide the 1935 proceeding be subject to doubt, notwithstanding the lack of a statutory provision relating to a change in point of diversion such as is now prescribed by § 1, ch. 138, S.L. of Wyoming, 1965 (§ 41–10.4, W.S.1957, 1965 Cum.Supp.). The board has broad powers, direct and implied. Section 2, Art. 8, Constitution of the State of Wyoming; § 41–181, W.S.1957; Anita Ditch Company v. Turner, Wyo., 389 P.2d 1018, 1021. It has long been recognized that orders of the board establishing such rights are clothed with the dignity of decrees entered by the courts. May v. Penton, 45 Wyo. 82, 16 P. 2d 35, 36.

Prior to the present statute we several times held that a change in point of diversion could be made by an appropriator as a matter of right, provided injury to other appropriators did not result. Holt v. City of Cheyenne, 22 Wyo. 212, 137 P. 876, 880; Johnston v. Little Horse Creek Irrigating Co., 13 Wyo. 208, 79 P. 22, 28, 70 L.R.A. 341. Such a change has no effect upon the established priority of the appropriator making such change. Van Tassel Real Estate & Live Stock Co. v. City of Cheyenne, 49 Wyo. 333, 54 P.2d 906, 911, 912, certiorari denied 299 U.S. 574, 57 S.Ct. 38, 81 L.Ed. 423.

It was also said in the Van Tassel case, 54 P.2d at page 912, that approval of the regulatory authorities was not then required. Nevertheless, if an appropriator chose to submit to the jurisdiction of the board for purposes of having a change already made confirmed and his certificate of appropriation amended accordingly, we perceive no reason why that could not have been done. In fact the board is no doubt better equipped than a court to determine such intricate and involved matters. Laramie Rivers Co. v. Le Vasseur, 65 Wyo. 414, 202 P.2d 680, 694.

Under all of these circumstances and the further consideration that adjudicated water rights of long standing are not readily to be set aside and will not be set aside unless the proof of just cause is "clear, cogent and convincing," Crowell v. City of Cheyenne, 54 Wyo. 459, 93 P.2d 934, 938, we cannot say the court erred in refusing to declare void the order entered by the board.

We next consider the defendants' contentions that the trial court erred in determining that plaintiff was the owner of the Harrison Ditch and had acquired an easement for a right of way therefor across the lands of the defendants by prescription. At the outset, we think it would be well to mention certain preliminary matters.

To us the language of the decree is somewhat misleading. Although plaintiff did claim to be the owner of a water ditch across the defendants' lands, it developed at the trial that the basis of plaintiff's claim was simply that since 1882 it, or its predecessors, had utilized a natural draw traversing the lands of the defendants as a part of their irrigation works to convey water out of Dry Creek to lands in Sections 11, 1, and 2. That this could be done, if the draw was suitable for that purpose, is not open to question, Big Goose and Beaver Ditch Co. v. Morrow, 8 Wyo. 537, 59 P. 159, 160, 80 Am.St.Rep. 955; Evans Ditch Co. v. Lakeside Ditch Co., 13 Cal.App. 119, 108 P. 1027, 1031, and as we have heretofore said, the trial court on the basis of the physical characteristics of the draw was entitled to find that the draw had been so used. But that does not connote ownership of the draw. The most that plaintiff could have acquired was an easement to use the draw as a portion of the Harrison Ditch. Linck v. Brown, 55 Wyo. 100, 96 P.2d 909, 911; and Hughes v. King, 142 Mont. 227, 383 P.2d 816, 817.

We are satisfied also that the question of plaintiff's rights must be determined under the doctrine of prescription rather than under its claim that the patents issued in 1893 and 1900 respectively to lands affected in Section 10 reserved a right of way for the Harrison Ditch pursuant to the provisions of 43 U.S.C.A. § 661 (1964). We must assume, of course, as plaintiff argues, that at the time the certificates of appropriation were issued in 1894 the board of control investigated and determined that Cooper, plaintiff's predecessor, had a ditch to convey the water from the point of diversion to the lands in question and that such determination was prima facie evidence of a right to use the ditch, Linck v. Brown, supra; Collett v. Morgan, 21 Wyo. 117, 128 P. 626, 627, modified on rehearing 129 P. 433; Sturgeon v. Brooks, 73 Wyo. 436, 281 P.2d 675, 677. The difficulty is, however, that plaintiff produced no evidence to show the location of the ditch at that time. From copies of the proofs of appropriation we gather that the location was shown on a plat prepared, or caused to be prepared, by the state engineer and made a part of the proceedings as required by § 41–180, W.S.1957. Unfortunately, however, copies of those plats are not a part of the record here. Absent some explanation of the missing plats, which would seem to have been the most reliable source of information to show the location of the ditch for the period antedating the patents, we can only conclude that plaintiff failed to support its contention.

An acquisition of an easement by prescription in this jurisdiction is governed by the common law. Haines v. Galles, 76 Wyo. 411, 303 P.2d 1004, 1007. A discus-

**260**

sion of applicable general principles will also be found there and reference was made to the statement in 17 Am.Jur., Easements, § 59 (now 25 Am.Jur.2d, Easements & Licenses, § 49), wherein it was said:

"The establishment of a prescriptive right depends upon showing a continued and uninterrupted, open and visible, use of a definite right in the land of another which is identical to that claimed as an easement and has a relation to the use of, and a direct and apparent connection with, the dominant tenement under an adverse claim of right for a period corresponding generally to the statutory period of limitations in the particular jurisdiction. * * *"

Although several of the cases continue to mention exclusive use as an essential element to the acquisition of an easement by prescription, most agree that the term is not to be given the meaning which is given to it in the acquisition of title by adverse possession. It simply means that exercise of the right shall not be dependent upon a similar right in others. The use may be shared with the owner of the servient estate, for example, House v. Close, 48 Tenn.App. 341, 346 S.W.2d 445, 448; Hunt Land Holding Company v. Schramm, Fla.App., 121 So.2d 697, 700; Shellow v. Hagen, 9 Wis.2d 506, 101 N.W.2d 694, 697; Scott v. Weinheimer, 140 Mont. 554, 374 P.2d 91, 95–96; 2 Thompson on Real Property, § 335, p. 155 (1961 Repl.); 25 Am.Jur. 2d, Easements & Licenses, § 59. Referring specifically to irrigation ditches, it appears that the view expressed in the foregoing authorities is in harmony with the public policy of this state as declared in § 41–254, W.S.1957. The provisions of the section, of course, are not applicable here, but they do contemplate that a joint user may acquire an interest in an irrigation ditch by prescription. Adherence to the elements mentioned in the Haines case provides a sufficient test.

In Gustin v. Harting, 20 Wyo. 1, 121 P. 522, 527, Ann.Cas.1914C, 911, it was said:

"* * * The actual and continuous use of an easement, as of right, for the period of limitation for bringing an action to dispossess the claimant, creates the presumption of a grant. * * *"

The presumption is not conclusive, but the owner of the servient estate has the burden of rebutting it by showing that the use was permissive. Auchmuty v. Chicago, Burlington & Quincy Railroad Company, Wyo., 349 P.2d 193, 197.

Also, in connection with defendants' contentions on this phase of the case, we mention that some difficulty has been encountered in sorting out the evidence we are privileged to consider under the prevailing rule that the judgment is to be given the benefit of all inferences reasonably to be drawn from the evidence favorable to the prevailing party. In a large measure the defendants rely upon the testimony of Bryan White which is in conflict with the favorable evidence and we must, of course, put such testimony aside. Frontier Refining Company v. Kunkel's, Inc., Wyo., 407 P.2d 880, 881.

With the foregoing preliminary matters in mind, we turn to the arguments of defendants offered in support of their contentions. It is first urged that the special finding of the trial court in favor of defendants, affording them the right to continue use of the natural draw and the spreader dams therein, is inconsistent with the import of the general finding that plaintiff's use of the draw was exclusive, in the sense that the use was continuous and uninterrupted. Their theory is the trial court found as a fact that the spreader dams interrupted such use. We are not convinced that the record supports the theory. No doubt the trial court had in mind the right of the owner of the servient estate to use his land in any manner that did not substantially interfere with the easement, and there was ample evidence from which it could find that the spreader dams did not substantially interfere with plaintiff's use of the draw as a ditch. Both Dixon and LeBeau testified that there were no

obstructions in the draw interfering with its use until the defendant Bryan White erected the dams that brought about this litigation in 1961. The finding that the spreader dams were there is not inconsistent with that testimony. The trial court could conclude that even though some of the water was diverted, sufficient was conveyed in the draw to satisfy plaintiff's rights. The cases to which we are cited by defendants in support of their proposition, Bree v. Wheeler, 129 Cal. 145, 61 P. 782, and Authers v. Bryant, 22 Nev. 242, 38 P. 439, are not helpful for the reason that they relate to acquisition of a water right by adverse possession. Our independent research has disclosed no case similar to the facts in this case, and in any event we think it was a question of fact determined adversely to the defendants rather than in their favor.

 It is next urged that plaintiff failed to prove that its use of the draw was adverse or hostile to the defendants and their predecessor for the reason the water was used for their own purposes. The basis for this argument is that defendants' predecessor King welcomed the water that came onto his lands from the upper portion of the Harrison Ditch and, therefore, the presumption must be that the use of the draw was permissive. That would seem to be quite speculative. We think it is also fallacious. The contention assumes that King utilized the draw as a part of his ditch from the outset. There is no substantial evidence of that. The plat filed with his application for a permit to appropriate water in 1897 discloses that the draw was not to be a part of the King Ditch. The witness Dixon said that as late as the year 1920 it was not being so used. While the defendant Bryan White testified to the contrary and said the spreader dams had always been there, he later modified that and said in the year 1950 he came in actual contact with King's irrigation system and observed that the dams appeared to have been "there longer." The

only inference that could be drawn from such evidence would be that King began using the draw sometime during the period 1920 to 1950. In the meantime, as disclosed by the records of the board of control, plaintiff's predecessors had made use of the draw as a part of the Harrison Ditch as early as the year 1905. In other words, the statute of limitations had already run by the time King also commenced use of the draw. Under these circumstances, the presumption was the opposite of that contended for by defendants, Gustin v. Harting, supra, and the trial court was warranted in concluding that the defendants had not met their burden. In this connection we perhaps should mention that defendants make no contention that use of the draw as a part of plaintiff's irrigation works was not shown to be open, visible, and notorious.

 The defendants also complain that the trial court erred in excluding testimony tending to show an offer by the defendants to assist plaintiff in relocating a portion of the Harrison Ditch in such a manner as to convey the water around, rather than through, the defendants' lands. They contend that the evidence was relevant and material on the question of prescription. The only authority cited to sustain the argument is Kammerzell v. Anderson, 69 Wyo. 252, 240 P.2d 893. Frankly, we fail to grasp the applicability of that case to the proffered testimony in this case. While the opinion does not so state, it is apparent that there was evidence from which the trial court was entitled to find, as it did find, that the joint use of a driveway by the owners of adjoining residential lots was the result of a mutual parol license and nothing had occurred making it inequitable for either to revoke the license. The case went no further than to recognize the rule theretofore recognized in previous cases of this court that use under those circumstances does not ripen into an easement by prescription. As we have seen, those circumstances are not present in the instant case. The defendants failed to meet their

burden to show that the use of the draw by plaintiff's predecessors was permissive in its inception. At the time the offer here was made the use had long since ripened into an easement by prescription. The use of the draw as a part of the Harrison Ditch was a valuable right. Chicago, B. & Q. R. Co. v. McPhillamey, 19 Wyo. 425, 188 P. 682, 685, Ann.Cas.1913E, 101. As owner of the right the plaintiff was not required to consent to the change proposed by the defendant Bryan White. Kane v. Porter, 77 Colo. 257, 235 P. 561, 44 A.L.R. 165; and Archibeck v. Mongiello, 58 N.M. 749, 276 P.2d 736, 739. Thus, the testimony offered was not relevant or material and the trial court did not err in excluding it.

Little need be said of a further claim by the defendants that the case had become moot at the time of trial for the reason that there was then pending a proceeding before the board of control wherein plaintiff was seeking authority to make another change in point of diversion so as to convey its appropriated water through the Canyon Ditch, rather than the Harrison Ditch. Should such relief be granted by the board, the defendants' lands would no longer be burdened by plaintiff's easement. So far as we are advised, that proceeding is still pending and it is not for us to speculate on its outcome. The authority sought may or may not be granted. Obviously, the case had not become moot.

The part of the judgment declaring plaintiff to be the owner of the Harrison Ditch, insofar as it affects the lands of the defendants, will be modified to provide that plaintiff was the owner of an easement to use the natural draw across defendants' lands as a portion of the Harrison Ditch for the conveyance of its appropriated water. In all other respects the judgment is affirmed.

Affirmed as modified.

HARNSBERGER, J., not participating.